## W. B. PRATT v. THE STATE.

No. 3285. Decided June 25, 1906.

**1.—Murder in Second Degree—Evidence—Declarations of Defendant—Res Gestae.**

Where upon trial for murder, defendant proposed to prove that immediately after the shooting he came to the house of the witness, a short distance from the scene of the tragedy, and there had a short conversation with said witness in regard to the homicide; the testimony should have been admitted: especially where the testimony of several other witnesses was admitted in regard to defendant's statement concerning the homicide.

**2.—Same—Charge of Court—Threat—Affirmative Charge on Self-Defense Necessary.**

Where upon trial for murder, the evidence showed that defendant was in his own place of business; that there had been previous difficulties and threats between him and deceased; that defendant was a feeble and weak old man and deceased was strong and robust; that the latter approached the former's store or place of business in an angry manner; that defendant told him to stop, but that deceased kept coming, when defendant shot him, the court should have charged the law of threats, connected with the act of demonstration manifesting an intent to carry into execution the threat of deceased, in an affirmative manner, and a negative charge in the abstract on self-defense did not apply the law to the facts.

**3.—Same—Charge of Court—Self-Defense—Intent to Kill.**

Upon a trial for murder, the defendant was not debarred of the right of self-defense, because he may have coolly and calmly made up his mind to kill the deceased, if the deceased at the time of the meeting attacked defendant, and did some act manifesting an intention to take the life of defendant or do him serious bodily injury; and a charge of the court instructing the jury contrariwise was error; especially where the issues of self-defense and manslaughter were in the case.

**4.—Same—Impeaching Testimony—Original Testimony.**

Where upon a trial for murder the testimony of some of the witnesses was partly impeaching testimony and partly testimony which bore directly on the merits of the case, it was error in the court's charge to limit the testimony of such witnesses to impeachment, and eliminate the same for all other purposes.

**5.—Same——Burden of Proof—Confessions of Defendant.**

Where in a trial for murder, the confessions of defendant that he killed deceased were admitted, and in connection and as a part of his statement his further statements were admitted that he did it in self-defense, a charge that the burden was on the State to prove the falsity of the defendant's statement that he killed deceased in self-defense, should have been given; as the State relied to a large extent on the confessions of the defendant and the circumstances were such to call for such an instruction.

**6.—Same—Evidence—Mental Condition of Defendant.**

Where upon trial for murder the testimony offered on the part of defendant's family and those who knew him well showing that his physical and mental condition were greatly impaired at the time of the homicide, to such an extent that at times he was considered irresponsible, should have been admitted in evidence.

**7.—Same—Evidence—Intent—Declarations of Deceased.**

Upon a trial for murder where defendant took the stand and testified that he had no recollection of the threats imputed to him; and he would have answered in response to the question if he had made those threats whether he made them seriously with the intention of executing them, that they were not seriously made and that he had no intention of killing deceased, such testimony should have been admitted in evidence.

Appeal from the District Court of Hopkins. Tried below before the Hon. R. L. Porter.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Patterson & Sharp, Wood & Melson, S. H. Russell, Templeton, Crosby & Dinsmore,* for appellant.—On question of self-defense: Swain v. State, 86 S. W. Rep., 335. On question of intent: Hjeronymus v. State, 46 Texas Crim. Rep., 157. On confession of defendant and burden of proof: Jones v. State, 29 Texas Crim. App., 20.

*J. E. Yantis,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for murder in the second degree; five years being fixed as the punishment. The trial was had in Hopkins County on change of venue from Delta County. There are a great number of errors assigned, many of which we deem unnecessary to review.

Appellant proposed to prove by Mrs. Sue Pratt that immediately after the shooting he came to the house of witness, a short distance from the scene of the tragedy, and a short conversation occurred between them in regard to the homicide. Her testimony was excluded upon objection urged by the State that she was not the first party whom appellant met and told his story of the shooting, and that his statement was self-serving and was not res gestæ. These were grounds of objection urged by the State. The bill of exceptions puts the conversation as occurring "immediately" after the killing. Upon another trial, the testimony of this witness should be permitted to go to the jury, if the question arises then as now. The testimony of several witnesses was introduced in regard to the statement of appellant concerning the homicide, some of which were res gestæ, and some were introduced presumably because thought to be incriminating. Some of these conversations occurred very shortly after the homicide, and some reached as far away nearly as twenty-four hours. We see no reason why the evidence of some of these witnesses should be excluded and others admitted. Her testimony is to some extent very much as that of the witness Medlin, whose testimony was permitted to go to the jury.

An exception was reserved to the court's charge on threats; and another charge requested by appellant was refused. The first portion of the charge in regard to this phase of the testimony was in the abstract and did not apply the law to the facts. Then the court continues, as follows: "In order to justify the defendant in taking the life of the deceased it must appear that at the time of the homicide, the deceased did some act which was reasonably calculated, in view of all the circumstances to produce in the mind of the defendant the

belief that the deceased was then about to execute the threats so made."
It is contended (1) that the charge is in the abstract and does not
apply the law to the facts; and (2) that it fails to charge the jury,
if the defendant did some act at the time of the homicide which, taken
in connection with all the facts and circumstances and environments
of the case, was reasonably calculated, judging from the standpoint
of the defendant, to produce in his mind the belief that deceased was
about to execute his threats, the jury should then acquit. The charge
is negative and does not give the statute, as we understand it should
be given. The law of threats connected with the act of demonstration
manifests an intent to carry into execution the threat, is a statutory
ground for self-defense, and should be given in an affirmative manner
to the extent that defendant may have the benefit of the law as applied
to the facts covering this peculiar phase of the case, when the facts
make that condition. If appellant believed at the time that his life
was in danger, that the deceased was approaching him for the purpose
of executing his threat; that he had the physical ability to do so,
and that he had ordered him several times peremptorily to desist and
not approach him, and deceased was still approaching him in an in-
furiated condition, and if these matters reasonably appeared to de-
fendant to put his life in danger or his body open to serious bodily
injury, he had the legal right to shoot without legal blame. A special
charge was requested calling the court's attention to the deficiency in
the general charge, and it should have been given or a similar charge,
applying the law to the facts in an affirmative manner. While we
would hardly feel called upon to reverse for giving one and refusing
the other charge, yet upon another trial the special charge should be
given.

The court gave the following charge: "You are further instructed
that, if one whose mind is cool and calm, although smarting under indig-
nity previously inflicted upon him deliberately plans to take the life
of another and in pursuance of such determination meets such person
and kills him he would be guilty of murder, no matter if at such meet-
ing his life became in danger. Therefore, if the jury find from the
evidence that the deceased, C. M. Lyde, threatened to kill the de-
fendant, W. B. Pratt, or do him serious bodily injury, or in any other
way mistreat him, and if you further find that because of such conduct
the defendant deliberately determined to kill Lyde, and that when he
formed such determination his mind was cool and calm, and in a con-
dition to understand and comprehend the nature of the act and its
probable consequences, and if you further find that in pursuance of
such determination, if any, the defendant, W. B. Pratt, on learning
that Lyde was approaching the storehouse, armed himself; and if you
further find that when Lyde arrived where defendant was, the defendant
shot and killed Lyde, in pursuance of a determination previously
formed in his mind, if any, then he would be guilty of murder."

Exception was reserved to this charge upon the theory that it cut

appellant off from all hope of the right of self-defense. This charge should not have been given in the manner it was given. It does not debar the accused of the right of self-defense, that he may have coolly and calmly made up his mind to kill another, if the other at the time of the meeting attacked him, and did some act manifesting an intention to take the life of the slayer or to do him serious bodily injury. A party may coolly make up his mind to kill another, and yet if upon meeting the party whom he had determined to kill, that party makes an assault upon him which justifies him in killing in self-defense, the fact that the accused had formerly made up his mind to do the killing would not eliminate his right of self-defense. This charge goes to the extent of authorizing the jury to find appellant guilty of murder simply because he had made up his mind to kill deceased; and the further fact that he did kill him. If there was no issue of self-defense or of manslaughter in the case, perhaps this might not have been harmful. Of course, if a party makes up his mind coolly and deliberately to kill another, and does kill, when the other party is not doing anything, it would be murder. It is not correct, however, to give such a charge to the jury where the facts raise the issue of self-defense, unless the charge as given is limited by the law of self-defense. In other words, this charge is wrong because as given, it authorized a conviction of appellant independent and outside of his theory of self-defense and ignores the testimony bearing upon that issue.

In this connection a charge along the same line was given in regard to the law of manslaughter. It was erroneous to give this charge, and upon another trial it should not be given.

The testimony of the witnesses Blackwell and Tymes was admitted for the purpose of contradicting the witness Medlin. The testimony of Archie Shumate was admitted for the purpose of contradicting J. W. Medlin and Mrs. John Pratt. The testimony of Carter Anderson was also admitted in rebuttal for the purpose of contradicting the witness, Bolin. The court in his charge to the jury limited the testimony of this witness to impeachment. Without going into the accuracy of these charges in properly presenting that issue to the jury, upon another trial we would say, wherever it is necessary to charge in regard to the effect of impeaching testimony, the jury should be told that the evidence must be used for the purpose of affecting the credibility of the witnesses whose evidence is sought to be impeached. The serious objection to this charge, for instance in regard to the witness Shumate is, that it eliminates that portion of his testimony from consideration of the jury which bore directly upon the merits of the case. He was one of the important witnesses in the case. While he also gave some evidence of an impeaching character against Medlin and Mrs. Pratt, yet much of his testimony bore directly upon the main issues of the case. The court's charge eliminated his testimony

for all purposes except the contradiction of these witnesses. This was error.

The admissions and confessions of appellant that he killed deceased were admitted, and in connection and as a part of this statement his further statements were admitted that he did it in self-defense. It is contended that this being true, the burden is on the State to prove the falsity of the defendant's statement, that he killed deceased in self-defense. The State, to a very considerable extent relied upon the admissions or confessions of appellant. There was no eye-witness to the transaction. It occurred very early in the morning. Appellant was in his own place of business. There had been previous difficulties and threats pro and con. Appellant was a very weak, feeble old man, his mental faculties seem to have been largely incapacitated, and his physical condition very much impaired. Deceased was a very large, athletic, robust man, twenty years or more younger than appellant. He was approaching appellant's store or place of business, when appellant halted him and told him not to come upon him. This he repeated three or four times, and deceased continued to approach until within a few feet. Witnesses differ as to the distance, perhaps as far as twenty or twenty-five feet, when appellant fired. The gun was loaded with what the witnesses term "No. 7½ shot," which is next to the smallest shot used in cartridges for shotguns. Appellant stated further that deceased's appearances to him were that he was very much infuriated, or as he said, he had the appearance of a mad-bull coming at him, and realizing his previous threats and his own utter helplessness in a personal conflict with deceased, and deceased refusing to stop when ordered to do so, and anticipating that his life was in danger or his body of serious injury, he shot. Now, under these confessions, it is contended that the court should have charged the jury that it was incumbent on the State to disprove the statements of appellant which suggested the issue of self-defense; and in support of this we are cited to Jones v. State, 29 Texas Crim. App., 20. We believe that, under the authority of that case, and those cited therein, this charge should have been given. As was said in that case: "We do not wish to be understood as holding that in all cases where the admissions or confessions of a defendant are admitted in evidence against him, that it is necessary to give such or a similar instruction to the jury. What we decide is that in this case, in which the criminating evidence consists almost entirely of defendant's admission that he killed deceased, instruction should have been given, in view of the fact that the exculpatory portion of defendant's statements about the homicide were not shown by the State's evidence to be untrue. However, we are of opinion that in all cases where admissions and confessions of a defendant are admitted in evidence against him, and such admissions or confessions contain exculpatory or mitigating statements, it would be proper and just to the defendant to instruct the jury as was requested in this case. Pharr v. State,

7 Texas Crim. App., 472; 1 Greenleaf on Ev., 9th ed., secs. 218, 219, 442, 443; 1 Bishop Cr. Proc., secs. 1235, 1236." We believe, under the peculiar facts of this case, that a charge of this sort would have been proper. The parties had been friends up to Saturday evening, this killing occurred early on Sunday morning. Some trouble arose between the parties, and they became considerably excited. The evidence shows that each party had threatened the other. There was a meeting between the parties on Sunday evening; one being on horseback and the other on foot; and the trouble was aggravated between them. Both showed temper. There was evidence that one or the other, either invited or challenged the other to meet at the store Monday morning and settle the matter. The evidence is conflicting as to which one requested the meeting. On the morning of the homicide, appellant had gone to his store for the purpose of getting ice, and had opened the store sufficiently to let in the light, when deceased, observing this, approached rapidly from where he lived, some short distance away from the store. Appellant saw him coming, got his gun, and when deceased got within a short distance of the store, appellant warned him three or four times not to come, and fired one shot. Appellant's statement was admitted before the jury, and covered the transaction on Sunday evening, and the narration of the matters immediately antecedent to and dependant upon the homicide at the time of its occurrence. While he admitted the killing, and the State introduced this against him, defendant also stated the exonerating or justifying circumstances as a part and parcel of that statement. We believe, under the Jones case, supra, and authorities cited, that the law laid down in the Jones case should have been given; that is, we are of opinion that this case, under the facts, comes within the rule laid down in the Jones case.

There was considerable testimony offered on the part of the defendant's family, and those who had known him for years, going to show that in the last few years his physical condition had materially and seriously degenerated, and that his mind had been greatly impaired, so much so that at times he was considered by his family and friends as being irresponsible; and he would do things when under excitement or anger that he would not recall after his mind became cool. This testimony, in our judgment, should have been permitted to go to the jury. It bore upon his mental status or what may have been his mental condition at the time of the killing, and from the time of the trouble originating on Saturday evening: for he seemed to be very much disturbed about the trouble he had with deceased from the time it originated and on beyond the tragedy.

Appellant took the stand in his own behalf. Prior to his becoming a witness the State had proved as original evidence, and perhaps on cross-examination of some of the witnesses, threats made by appellant against deceased on Saturday evening and perhaps on Sunday, which involved the life of the deceased. Appellant testified in his

own behalf qualifiedly denying this, and stating, if he made them he had no recollection of them or words to that effect. He was then asked if he had made those statements, whether he had made them seriously with the intention of executing them. His evidence would have been that they were not seriously made, and that he had no intention of killing deceased. On exception by the State this was ruled out by the court and not permitted to go to the jury. We believe this was error. Berry v. State, 30 Texas Crim. App., 423, 33 Texas Crim. Rep., 414, 35 Texas Crim. Rep., 279. Elliott in his work on Evidence, volume 3, section 2146, says: "Where the character of the transaction depends upon the intent of the party, it is competent, when the party is a witness, to inquire of him what his intention was. The evidence of the party as to his intention in the transaction is not conclusive; but it is to be taken and considered with all of the other evidence in the case." It is further stated in the same section: "Intention is generally proved by circumstances, because usually there is no other mode of proof. But when the only person who knows the facts is accessible as a witness, his answer must necessarily be more direct evidence than any other; and if there is any reason to suspect his candor the jury may make all allowances called for by his position and demeanor." Mr. Wharton says: "Ordinarily a witness cannot be examined as to another person's motives. It is otherwise with the witness' own motives as to which, when relevant, he is always open either to examination or cross-examination, hence a party when examined as a witness may be asked as to his own motives and intentions, when these intentions are material." Again it is said: "Under the common law and practice, until recent times, no question as to defendant testifying as to the intentions could arise. Under recent statutes authorizing the accused to testify in his own behalf the question has several times arisen. As the intention is the essence of the crime and if there was no intention to commit the act there was no guilt, it necessarily follows that the testimony direct as to the intention is competent and it is not incompetent because it comes from the mouth of the defendant." Berry's case, supra. That threats were made by defendant was abundantly proved by the State. That he was very much excited and outraged by the conduct of the deceased was equally as abundantly proved. Under those circumstances, as we understand the law, appellant should have been permitted to state for the benefit of the jury, to be weighed by them, that he did not intend seriously to kill deceased when he made the threats. The jury or the court may not have believed him, but that would not render the testimony inadmissible. If he has the legal right to testify as to what his intentions were, it would not constitute a ground of exception that the court or jury might not credit his testimony in that respect. That would only affect its probative force and not its admissibility. We think there was error in rejecting this testimony.

The errors urged with reference to the empanelment of the jury,

challenges of jurors and the refusal of the continuance will not be revised as they may not occur upon another trial, and would scarcely arise in the same manner. For the reasons indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, absent.