## W. B. PRATT v. THE STATE.

No. 114.  Decided December 15, 1909.

Rehearing denied June 15, 1910.

**1.—Murder—Evidence—Impeaching Witness—Witness.**

Where, upon trial of murder, one of defendant's witnesses made statements to other witnesses which were at variance with her testimony which was that she did not see deceased before the gun fired, and as to what defendant's wife said and his reply thereto shortly after the homicide, there was no error in the court's action in permitting the State to lay the predicate to contradict defendant's witness' statement and to introduce witnesses to contradict it; and the State did not thereby make said witness its own witness, and such statemen was not a mere opinion of the witness.

**2.—Same—Charge of Court—Limiting Testimony to Credibility of Witness.**

Where, upon trial of murder, the State introduced witnesses impeaching one of the defendant's witnesses as to statements made to them and at variance with her testimony, the charge of the court was proper in limiting the testimony to the credibility of said witness, and this would imply of necessity that the jury would decide as to whether in fact such statements were made and the charge was therefore not on the weight of the testimony.

**3.—Same—Charge of Court—Impeaching Testimony.**

Where, upon trial of murder, the testimony admitted on the issue of the credibility of defendant's witness was all of an impeaching character, and the charge of the court, viewed as a whole, was consistent with the idea that the jury should in the first place determine whether the impeaching statements were made, and again, the effect of same as impeaching the testimony of the witness named, there was no error.

**4.—Same—Charge of Court—Murder in the Second Degree.**

Where, upon trial of murder, the court in his charge on murder in the second degree unnecessarily used the terms "sudden transport of passion" and the phrase "with malice aforethought," but correctly charged that if defendant unlawfully with intent to kill shot the deceased, and that the killing was not justified or upon passion aroused by adequate cause reducing the offense to manslaughter, that such killing is murder in the second degree, there was no error. Following Puryear v. State, 56 Texas Crim. Rep., 231.

**5.—Same—Charge of Court—Threats—Requested Charges.**

Where, upon trial of murder, the court not only gave most liberal instructions on the question of threats and also submitted several requested instructions on this issue fully covering the facts, there was no error in refusing further requested charges in respect thereto.

**6.—Same—Charge of Court—Confessions.**

Where, upon trial of murder, defendant's confessions were in evidence the court correctly instructed the jury that when the admissions or confessions of a party are introduced in evidence by the State, then the whole of the admissions or confessions are to be taken together, and the State is bound by them, unless they are shown to be untrue by the evidence; and that such admissions or confessions were to be taken into consideration by the jury as evidence in connection with all other facts and circumstances of the case. Overruling Wallace v. State, 66 S. W. Rep., 1102. Approving Pharr v. State, 7 Texas Crim. App., 472, and other cases.

**7.—Same—Charge of Court—Requested Charge—Defense of Property—Justifiable Homicide.**

Where, upon trial of murder, there was no evidence that the deceased attempted to enter the house of the defendant, except as such act had relation to a threatened assault upon defendant, there was no error in refusing a special requested instruction that the defendant had a right to prevent the deceased from entering his house; the court giving the fullest possible charge on the law of self-defense.

**8.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence sustained a conviction of murder in the second degree, the same will not be disturbed.

Appeal from the District Court of Hopkins. Tried below before the Hon. R. L. Porter.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Patterson & Sharp* and *Newman Phillips* and *J. M. Nelson* and *Templeton, Crosby & Dinsmore* and *L. L. Wood,* for appellant.— Upon question that the court's charge assumed that the defendant's witness made the statements attributed to her by the State's witnesses: Spivey v. State, 45 Texas Crim. Rep., 496; Green v. State, 49 Texas Crim. Rep., 645; Rice v. State, 49 Texas Crim. Rep., 569, 94 S. W. Rep., 1024.

Upon proposition that the State made the defendant's witness its own witness on cross-examination: Casey v. State, 49 Texas Crim. Rep., 174; Shackelford v. State, 27 S. W. Rep., 8; Woodward v. State, 42 Texas Crim. Rep., 188; Harvey v. State, 37 Texas, 365.

Upon question of impeaching defendant's witness Medlin: Hyden v. State, 31 Texas Crim. Rep., 401; Williams v. State, 24 Texas Crim. App., 637.

Upon court's charge on murder in the second degree in charging on sudden transport of passion, etc.: Gilcrease v. State, 33 Texas Crim. Rep., 619; Allison v. State, 86 S. W. Rep., 409; Carter v. State, 30 Texas Crim. App., 551; Peter v. State, 23 Texas Crim. App., 684.

Upon question of court's charge on threats: Buckner v. State, 55 Texas Crim. Rep., 511, 117 S. W. Rep., 802; Huddleston v. State, 54 Texas Crim. Rep., 93, 112 S. W. Rep., 66; Cohen v. State, 53 Texas Crim. Rep., 422, 110 S. W. Rep., 68; Pratt v. State, 50 Texas Crim. Rep., 227, 96 S. W. Rep., 8.

Upon question of court's charge on confessions: Wallace v. State, 66 S. W. Rep., 1102; Combs v. State, 54 Texas Crim. Rep., 613, 108 S. W. Rep., 647; Jones v. State, 29 Texas Crim. App., 20.

Upon court's refusal to submit requested charge on justifiable homicide in defense of property: Sims v. State, 36 Texas Crim. Rep., 154; Bearden v. State, 44 Texas Crim. Rep., 578; French v. State, 55 Texas Crim. Rep., 538; Bryant v. State, 51 Texas Crim. Rep., 66; Pryse v. State, 54 Texas Crim. Rep., 523, 113 S. W. Rep., 938.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—This is the third appeal of this case. The report of the first appeal will be found in the 50 Texas Crim. Rep., 227, 96 S. W. Rep., 8, and the second appeal is reported in the 53 Texas Cr. Rep., 281. On the trial, from which this appeal results, appellant was convicted of murder in the second degree and his punishment assessed at five years confinement in the penitentiary. It is deemed unnecessary to make an elaborate statement of the testimony. It may be stated, however, that appellant was a man some sixty-five years of age at the time of the homicide and was in right infirm health. The deceased, Lide, was a man about forty years old and very robust. The parties had had a difficulty in appellant's store some two or three days before the killing. Growing out of this difficulty appellant became very much enraged and made the most severe and fearful threats against deceased, stating in substance he was going to shoot him and he would follow him to his grave, and other statements of a somewhat similar character. The evidence on the whole tends to show that deceased did not attach so much importance to the difficulty, nor did he entertain towards appellant the same deadly animosity. The facts immediately surrounding the homicide are somewhat obscure, there being no eyewitness to the killing and most of the State's testimony is based on statements of appellant, supported by other circumstances in evidence. All the testimony showed that deceased was unarmed and was at a distance of some twenty feet or more from appellant at the time he was shot and killed. These facts, with the matters stated hereafter, will perhaps be sufficient to illustrate and make readily comprehended the matters hereafter discussed. There are some twenty-six bills of exceptions in the record, numerous requested instructions and many complaints of the charge of the court. It will be impracticable to undertake to review all of the matters and questions raised in the

motion for new trial. The more important of these questions are raised in a brief filed in this court on behalf of appellant and the questions so raised and presented will be discussed by us.

1. The first question presented in the brief relates to the action of the court in admitting the testimony of B. B. Taylor and Norman Kesler as to statements testified by them as having been made by Mrs. Willie Pratt, the intent and effect of which was to impeach her. Among other things, these witnesses were permitted to testify, after a proper predicate had been laid, that she, Mrs. Willie Pratt, stated to them. soon after the homicide that she had never heard Mr. Lide say anything against Mr. Pratt, and again that she had stated that appellant's wife asked him immediately after the killing, "Have you gone and killed old man Lide?" and appellant replied, "Yes, by God, I have." There can, we think, in the light of the record, be no sort of question that it was entirely proper to permit the impeachment of Mrs. Pratt as to the statement that she had never heard Mr. Lide say anything against Mr. Pratt. In her direct examination Mrs. Willie Pratt had testified that in a conversation with deceased on the night before the homicide he said that he had told the old man, meaning the appellant, that he would be over to the store in the morning and settle with him; said he would take a stick and break his neck, or something to that effect, and he didn't seem to be in a good humor. Again, on cross-examination, she stated that at this time deceased looked mad and said he would break his black neck, and said that he was going to do it. In connection with this testimony the State sought to prove by this witness, and asked her if it was not a fact that no such threats had been made, and if it was not true that she had stated on the Monday morning following that she had never heard Mr. Lide say anything against appellant, specifying the time and place where such statement was made by her to the witness named. This she denied. The witnesses named were produced by the State and testified in substance that she had made to them the statement, in effect, that deceased had made no threats of any kind against appellant and had never at any time said anything against him. This is more than a mere matter of opinion, but was a statement of a fact at variance with her testimony on the stand, tending to impeach and contradict her and was for this purpose admissible. As to the other matter she testified on direct examination that she did not see deceased before the gun fired; that she saw him after the gun fired between the store and shop going towards his house. In this connection she was asked if it was not a fact that at this time, at the time fixed by her on direct examination, that she heard appellant's wife say to him, "Have you gone and killed old man Lide?" and that appellant replied as above stated. The killing of deceased by appellant was admitted, and the admission of this testimony in proof of this fact was but confirmatory of much evidence introduced without objection. In view of the fact

that she had testified to seeing appellant immediately after the killing, it was competent for the State to follow up this inquiry and develop all the facts in connection therewith, not only as to what she saw, but what she heard, throwing light on the matter and to impeach and contradict her if she denied the statements imputed to her. This was admissible on the theory that the evidence shows that she was not far from the place of the killing and was in a position to not only have seen, but to have heard what several other witnesses heard, and was evidence from which the jury may have concluded that her statement of the facts was at variance with the true facts. It was not subject to the objection that on these questions the State made her its own witness and was therefore prevented from impeaching her.

2. Closely connected with this question is a complaint of the charge of the court touching the purpose and office of this testimony. On this question the court instructed the jury as follows: "You are instructed that you can consider the testimony of B. B. Taylor as to what was said to him by the witness Willie Pratt at her home on the morning of the killing, and that part of the testimony of Norman Kesler as to what was said to him by the witness Willie Pratt in the presence of B. B. Taylor at her home on the morning of the killing, only for the purpose of affecting the credibility of the witness Willie Pratt and for no other purpose." It is claimed that this charge is erroneous in that it assumes, as a matter of fact, that Mrs. Pratt did make the statements testified to by the witnesses named and that their testimony was true, and that in view of the fact that Mrs. Pratt denied making these statements that this instruction was particularly harmful. The charge complained of is not very aptly expressed, but we think, when considered in connection with the other charges and in the light of the whole record, that the jury could not have been misled by it. While not aptly framed, we think the intent and effect of the instruction is to charge the jury that the testimony of these witnesses as to what was claimed by them to have been said by Mrs. Willie Pratt was receivable for the purpose of impeachment and for no other purpose, and that the jury would not have understood the court to be undertaking to decide or instruct them as to whether such statements were made by her in fact or not. The very fact that the testimony was so limited and they were authorized to consider same for the purpose of impeachment, implied of necessity that they would decide as to whether in fact such statements were made, and if so, what weight and credit they would give the evidence.

3. A similar complaint is made in respect to the testimony of Sam Stenson, whose testimony impeached that of Jim Medlin. This instruction is better framed than the one just quoted and would undoubtedly aid the proper construction to be placed on the charge with reference to the testimony of Taylor and Kesler. It is as fol-

lows: "You are further instructed that the testimony of Sam Stenson in regard to the testimony of the witness Jim Medlin on a former trial of this case you may consider for the purpose of affecting the credibility of said Medlin and for no other purpose. You are further instructed that the testimony of the witnesses Blackwell and Tynes in regard to the testimony of the witness Jim Medlin before the grand jury of Delta County you may consider for the purpose of affecting the credibility of said Medlin and for no other purpose." These three paragraphs of the court's charge all occur together. The testimony admitted was all of an impeaching character and the instructions, viewed all together, are only consistent with the idea that the jury should, in the first place, determine whether the impeaching statements were made, and again, the effect of same as impeaching the testimony of the witnesses named.

4. On the trial appellant complained of the following portion of the court's charge: "If, therefore, the jury find from the evidence beyond a reasonable doubt that the defendant, W. B. Pratt, in Delta County, Texas, on or about the 10th day of July, 1905, with a gun in a sudden transport of passion, aroused without adequate cause, as hereinafter defined, and not in defense of himself against an unlawful attack, either real or apparent, producing a reasonable fear or expectation of death or serious bodily injury, with the intent to kill, did unlawfully, with malice aforethought, kill C. M. Lide, as charged in the indictment, you will find him guilty of murder in the second degree, and so say by your verdict, and assess his punishment at confinement in the State penitentiary for any period of time that the jury may determine and state in your verdict, provided it be not less than five years." In this connection it should be stated that appellant, having on former trials been convicted of murder in the second degree, the issue of murder in the first degree was not submitted, but on the contrary, touching this subject, the jury were thus charged: "You are instructed that the defendant in this case can not be convicted of murder in the first degree, and you will not consider that degree of murder in your deliberations." The complaint is made that this charge was incorrect in that it fails to fairly apply the law of murder in the second degree to the facts of the case, in this: That it makes appellant guilty of murder in the second degree, when defending himself against an unlawful attack, real or apparent, unless such an attack produced in him a reasonable fear or expectation of death or serious bodily injury, while the law is that defendant would not be guilty of murder in the second degree if, when defending himself against an unlawful attack, he was influenced to resist the attack by fear of death or serious bodily injury, which was unreasonable; but would be guilty of the offense of manslaughter only. While it was unnecessary for the court in this instruction to have used either the term, "sudden transport of passion," or the phrase, "with malice aforethought," their inclu-

sion does not render the charge vicious. It is undoubtedly the law in this State that where one person unlawfully and with the intention so to do kills another, and there is an absence of proof of express malice, and the killing is not justified, or upon passion aroused by adequate cause, reducing the offense to manslaughter, that such killing is murder in the second degree. Puryear v. State, 56 Texas Crim. Rep., 231, 118 S. W., 1042.

5. Again, complaint is made of the charge of the court on the subject of threats. On this subject the court charged the jury as follows: "Where a person is charged with the offense of murder and seeks to justify himself on the grounds of threats made against his own life, he is permitted under the law to introduce evidence of such threats, but the same shall not be considered as justification for the offense unless the person killed, by some act then done or by his conduct manifested an immediate intention to execute the threat or threats so made. In order to justify the defendant in taking the life of the deceased it must appear at the time of the homicide the deceased did some act or his conduct was such which was reasonably calculated, in view of all the circumstances, to produce in the mind of the defendant the belief that the deceased was then about to execute the threats so made. If you believe from the evidence that the defendant killed the deceased, and if you further believe that prior thereto the deceased, C. M. Lide, had made a threat or threats against the life of the defendant, or to do him serious bodily injury, and at the time of the shooting the deceased did some act or was guilty of some conduct taken in connection with all the facts and circumstances and environments of the case which was reasonably calculated, judging from the standpoint of the defendant, to produce in the mind of the defendant the belief that the deceased was about to execute his threats, the jury should then acquit the defendant." It should be further stated that there was no testimony of any words spoken by deceased with reference to which appellant could in any event have acted. In connection with this charge at the request of counsel for appellant the court gave the following instruction: "If you believe that the defendant, on account of the words, threats, acts and conduct of the deceased, apprehended that the deceased might make an assault upon him, then the defendant had a legal right to defend himself against such anticipated violence and to get and load a gun for that purpose and to place the gun where he could get and use it in case of such assault being made upon him by the deceased. And the making of such preparations would not in any way impair or limit the defendant's full and perfect right to use the gun in resisting any threatened violence to his person by the deceased under the rules of law explained to you in the other charges given you." In this connection the court also gave the following special charge: "You

are instructed that where a defendant accused of murder seeks to justify himself on the ground of threat against his own life by the deceased he is permitted to introduce evidence of threats so made, but the same should not be regarded as affording a justification for the homicide, unless it be shown that at the time of the homicide the person killed by some act then done manifested an intention to execute the threats so made. Therefore, if you believe from the evidence that the deceased, C. M. Lide, threatened to kill the defendant, or to do him serious bodily injury, and you further believe that the defendant was old and feeble and that the deceased was younger and larger and much stronger than the defendant, and that on account of the disparity in age, size and strength of deceased and defendant, deceased was able to carry out such threats without the use of weapons, such as a pistol, knife or bludgeon, and you further believe that at the time of the killing the deceased was then advancing toward the defendant, and that defendant called to deceased to stop or halt and he did not do so, and you further believe that the act of the deceased in so advancing toward the defendant and in not stopping when asked to do so by the defendant was a manifestation of an intention to execute such threats or that the act of the deceased in so advancing towards the defendant was reasonably calculated to create and did create in the mind of the defendant the belief that the deceased was then and there about to execute such threats, then the defendant had the right to kill the deceased in order to protect himself from such threatened danger and you should acquit him, even though you should find that the deceased was not armed at the time." Also in addition thereto this requested instruction by counsel for appellant: "You are instructed that even if you should believe from the evidence the defendant made threats against the deceased that fact would not preclude the defendant from defending himself against any unlawful violence offered to his person by the deceased." In view of all the instructions given in the general charge of the court and at the request of counsel for appellant, we can not see the seriousness of the complaint made by appellant. The court seems to us to have given the most liberal instructions on this question and it can not be said that further charges in respect thereto should have been given by the court. Ellis v. State, 30 Texas Crim. App., 601; Mealer v. State, 32 Texas Crim. Rep., 102.

6. Complaint is made of the following paragraph of the court's charge: "You are further instructed that when the admissions or confessions of a party are introduced in evidence by the State, then the whole of the admission or confession are to be taken together, and the State is bound by them, unless they are shown to be untrue by the evidence; such admissions or confessions are to be taken into consideration by the jury as evidence in connection with all other facts and circumstances of the case." In support of this contention we are referred to the case of Wallace v. State, 66 S. W., 1102.

The precise charge given in this case was in that case condemned and held to be erroneous. There is, however, no discussion of the matter and no authorities cited, the court merely remarking that this charge was upon the weight of the evidence and should not have been given. The Wallace case was undoubtedly incorrectly decided and overlooked the settled rules of the decisions in this court since the case of Pharr v. State, 7 App., 472, and should be and is hereby overruled. The decision in the Pharr case is in terms approved in the first opinion rendered in this case, 50 Texas Crim. Rep., 227, 96 S. W., p. 8, where Judge Davidson, speaking for the court, says: "However, we are of opinion that in all cases where admissions and confessions of a defendant are admitted in evidence against him, and such admissions or confessions contain exculpatory or mitigating statements, it would be proper and just to the defendant to instruct the jury as was requested in this case." In the Pharr case, supra, after referring to a charge of the court held to be erroneous, it is said: "This portion of the charge was calculated to neutralize a previous portion, which was substantially correct, to this effect: 'When the admissions or confessions of a party are introduced in evidence by the State, then the whole of the admissions or confessions are to be taken together, and the State is bound by them unless they are shown to be untrue by the evidence; such admissions or confessions are to be taken into consideration by the jury as evidence in the case.'" This charge is in terms approved in the case of Combs v. State, 52 Texas Crim. Rep., 613, 108 S. W., 649, where the charge in the Pharr case is copied and approved. This precise charge, it may also be stated, was approved on the second appeal, 53 Texas Crim. Rep., 281, 109 S. W., 138. So it would seem the authorities are unanimous and unbroken in support of the charge criticised.

7. Complaint is made that the court refused to give an instruction to this effect: "If you believe from the evidence that on Saturday afternoon before the killing on Monday morning a difficulty occurred between the deceased and the defendant, and that on the morning of the killing the defendant went to his store for the purpose of getting ice and that the deceased voluntarily approached the storehouse and manifested a purpose of entering the same over the protest of the defendant, then the defendant had a right to prevent the deceased from entering his house and to use whatever force reasonably appeared to him to be necessary in view of all the surrounding circumstances and the preceding words, threats, acts and conduct of the deceased to prevent the deceased from entering the house, and if he used no more force than reasonably appeared to him to be necessary to accomplish the purpose, then the defendant would be not guilty and you should so find by your verdict." There was no evidence in the case of a design or attempt on the part of deceased to enter the house, except as such act had relation to a threat-

ened assault upon appellant, and any attempt or design on the part of the deceased to enter the house at all is raised in the most fragmentary manner. The court gave the fullest possible charge on the law of self-defense, instructing the jury, among other things, as follows: "Homicide is justifiable and is no offense against the law when committed in necessary self-defense. This occurs when one is attacked in such a manner as to produce in his mind a reasonable apprehension of death or serious bodily injury, or where it reasonably appears to one, from the act or acts and conduct, coupled with the words, if any, of the person killed, that the slayer is thereby in danger of death or serious bodily injury and he kills to protect himself from such danger, or apparent danger, then such killing is deemed to be in justifiable self-defense. No person is bound to retreat in order to avoid the necessity of killing his assailant, and anyone, in defending himself, has the right to stand his ground and defend himself, and to kill his adversary if necessary. Where the question arises as to whether or not the person committing the homicide has reason to apprehend danger, the facts and circumstances must be viewed and considered from his standpoint at the time and from no other. And if the deceased at the time was doing any act or conducting himself in such manner that made it reasonably appear to the defendant that he, the defendant, was in danger of death or serious bodily injury at the hands of the deceased, then the defendant had a right to act upon such appearances of danger, viewed from his own standpoint, regardless of whether the danger was real or not. If you believe from the evidence that the defendant, W. B. Pratt, shot and killed C. M. Lide on or about the 10th day of July, 1905, in Delta County, Texas, and if you further believe that at the time, or shortly prior thereto, the deceased was in the act of making an attack upon the defendant, or made some demonstration or performed some act or conducted himself in such manner as to indicate an intention of inflicting death or serious bodily injury upon the defendant, or if the deceased was doing some act or acts, or conducting himself in such manner, which either alone or together with accompanying words, if any, produced in the mind of the defendant as viewed from his standpoint, which considered with all the facts and circumstances as known to the defendant, or as believed by the defendant to exist, a reasonable apprehension of death or serious bodily injury at the hands of the said C. M. Lide, then the defendant had the right to kill the deceased in self-defense, and if you believe that he did kill the deceased to protect himself from said danger or apparent danger, then such killing is in justifiable self-defense." This charge, taken in connection with the special charges given, at the request of appellant, and copied above, presented the whole issue in the light most favorable to appellant and left him, as we believe, absolutely without just cause for complaint.

8. Finally, it is insisted that the verdict of the jury is contrary

to and unsupported by the evidence and at variance with, and in the face of the admissions and statements of appellant introduced in evidence and that the conviction, for this reason, should be set aside and the cause remanded. We can not agree to this contention. We think there was much evidence in the record which tended strongly to show that the killing was not in self-defense, but was the result of anger, rage and an outburst of passion, springing, no doubt, from inconsiderate impulse and due in part to appellant's infirmities, both of body and temper. We can not escape the conviction, in reading this record, that appellant, due in part to his bodily affliction and in part to the infirmities of temper, caused, in part, by dissipation, in his anger unwisely and without justification shot and killed deceased. We may, as we do, in view of his age and infirmities, read the record with regret and pity for the consequences, but nevertheless, sitting as a court of· appeals, we are powerless to interfere, unless we could get our consent to substitute our sympathies for our judgment. This we ought not to do and can not do.

Finding no error in the record, the judgment of conviction is hereby in all things affirmed.

*Affirmed.*

Davidson, Presiding Judge, and Thomas B. Love, Special· Judge, concur in overruling motion for rehearing.

[Motion for rehearing denied June 15, 1910.—Reporter.]