### J. H. MESSIMER v. THE STATE.

#### No. 5760.   Decided May 26, 1920.

**1.—Murder—Evidence—Character of Deceased—Cross-examination.**

Where, upon trial of murder, defendant introduced evidence that de-
ceased bore the general reputation of a violent and dangerous man, and in
his testimony related various conversations with the deceased in which the
latter had told him of difficulties in which he had been engaged and in
which he had been the aggressor, naming some of the parties, there was no
error on cross-examination by State's counsel to ask witness whether he had
the persons in attendance upon the court, to which the defendant answered
in the negative.   Distinguishing Clifton v. State, 46 Texas Crim. Rep., 18.

**2.—Same—Evidence—Character of Deceased—Specific Acts of Violence.**

Where, defendant sought to justify the homicide upon his reasonable
belief that the deceased was armed, etc., the specific acts of violence by the
deceased, known to the accused, could have been proved.   Following Crass
v. State, 31 Texas Crim. Rep., 314; and the prosecuting officers not knowing
of any of the difficulties between the deceased and others, to which the de-
fendant referred, had a right to ask whether these parties were in attend-
ance upon court, and he cannot justly complain of the reference to such
failure to have these parties present in the argument of State's counsel.

**3.—Same—Evidence—Cross-examination—Bill of Exceptions.**

Where, upon trial of murder, the defendant was asked: "You did not
appeal to anyone for any protection when he brought that gun out there,
did you?" to which defendant objected on the ground that the same was
wholly irrelevant, immaterial, and prejudicial to the defendant; and to the
answer that the witness did not, the same objections were urged, and the
bill of exceptions failed to set out facts as to the surrounding circumstances
as to such testimony, there was no reversible error.

**4.—Same—Cross-examination of Defendant.**

Where defendant offers himself as a witness to show from his stand-
point that he was under reasonable apprehension of danger when he fired
the fatal shot he is subject to cross-examination as any other witness.   Fol-
lowing Howard v. State, 25 Texas Crim. App., 691, and other cases.

**5.—Same—Evidence—Physical Testimony—Screen Door.**

Where, upon trial of murder, it developed that the fatal shots by de-
fendant were fired through a screen door between himself and deceased,
there was no error during the cross-examination of defendant to exhibit the
said screen door to the jury, and to introduce the same in evidence, a sub-
stantial identity of conditions of said door being apparent.

6.—Same—Evidence—Opinion of Witness—Bill of Exceptions.

Where defendant objected that certain testimony with reference to what happened was simply an opinion of the witness, but the bill of exceptions was too meager to enable this court to decide whether or not the testimony was admissible or hurtful, there was no reversible error.

7.—Same—Self-defense—Apparent    Danger—Charge    of    Court—Requested Charge.

Where, upon trial of murder, the court gave the proper charge on self-defense and also submitted requested charges on said subject, there was no error in refusing other special charges which embraced the same subject matter in different phraseology.

8.—Same—Charge of Court—Continuing Danger.

Where, upon trial of murder, the court had given the requested charge with reference to continuing danger and the right to continue to shoot, and in the main charges instructed the jury that the defendant was not required to retreat, etc., there was no error in refusing a requested charge on the same subject.

9.—Same—Practice in District Court—Retirement of Jury—Screen Door.

Where, upon trial of murder, a certain screen door was introduced in evidence to show the range of the shots, etc., there was no error in permitting the jury to take, in their retirement, said door. Following Chalk v. State, 35 Texas Crim. Rep., 116.

10.—Same—Argument of Counsel.

Where argument of counsel was a legitimate deduction from and comment upon various phases of the evidence, there was no reversible error.

Appeal from the District Court of Potter. Tried below before the Honorable Henry S. Bishop.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*L. S. Kinder and Reeder & Reeder,* for appellant.—On question of permitting State to show that defendant did not have in attendance at court the parties named by deceased, and whom he claims to have assaulted: Maddox v. State, 173 S. W. Rep., 1026; Cromeans v. State, 129 S. W. Rep., 1129; Trinkle v. State, 158 S. W. Rep., 545; Clifton v. State, 79 S. W. Rep., 824.

On question of introducing door in evidence: State v. Goddard, 48 id., 82;

On question of cross-examination of defendant as a witness: Newman v. State, 70 S. W. Rep., 951.

On question of argument of counsel: Stevison v. State, 89 S. W. Rep., 1072; Bishop v. State, 160 S. W. Rep., 705; Black v. State, 187 id., 332.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

MORROW, JUDGE.—The conviction is for murder, with punishment assessed at confinement in the penitentiary for five years.

Appellant introduced evidence to the effect that deceased bore the general reputation of a violent and dangerous man, also that it was the custom and habit of the deceased to go armed; that the deceased had threatened to arm himself and attack the appellant, and shortly before the homicide appellant had seen a pistol among the effects of the deceased, and believed him to be armed with a pistol and in the act of removing it from his pocket for use against the appellant at the time the fatal shots were fired. In his testimony the appellant related various conversations with the deceased, in which the deceased told of difficulties in which he had been engaged, and in which he had been the aggressor, naming some of the parties with whom he was engaged. On cross-examination of the appellant, he was asked by State's counsel whether he had in attendance upon the trial the persons named by deceased as having been injured by him in the various difficulties mentioned. The appellant answered that he did not. This question and answer were permitted over the objection of the appellant, and the ruling is made the subject of complaint on this appeal. In substance, this contention is that appellant was under no duty to produce the witnesses, and that their testimony to specific acts of violence by the deceased would not be admissible, and that the ruling tended to discredit the appellant's right of self-defense. We are referred to the case of Clifton v. State, 79 S. W. Rep., 824, wherein the rule announced is that the effort of the sheriff or other persons to procure the attendance of a witness is not provable as a circumstance against the accused on trial. That rule, where the question is capable of casting suspicion upon the accused, or corrupting a witness or suppressing his testimony without proof thereof, is a sound one, and has been frequently applied. Funk v. State, 85 Texas Crim. Rep., 527, 208 S. W. Rep., 513. Its application in the present instance is not apparent. Touching the effect of the failure to call a witness who is present or available, we are aware of no rule inhibiting the use on the trial of the failure of either the accused or the prosecution to use an available and competent witness who was present, unless it be one who is privileged from testifying. Corpus Juris, Vol. 16, p. 541, Sec. 1023. The matter in hand, however, is the proposition that the case must be reversed because the prosecution asked the appellant while testifying as a witness if certain persons, whom he named, and who would probably know certain facts, were present, or whether an effort had been made to secure their attendance. The record does not indicate that the prosecuting officers knew prior to the time that appellant gave his testimony of any of the difficulties between the deceased and others, to which appellant referred. It was not the reputation of the deceased

that was involved. It was his mental attitude toward the appellant, and the existence of reasonable grounds upon the part of the appellant to dread him and fear an attack from him. The deceased was unarmed when he was shot. Appellant seeks to justify the homicide upon his reasonable belief that the deceased was armed, and that he was making a demonstration preparatory to attack. Under such circumstances many instances are found in the books in which the specific acts of violence by the deceased, known to the accused, may be proved. Among these are Hampton v. State, 65 S. W. Rep., 527, Poer v. State, 67 S. W. Rep., 500; Burnet v. State, 12 Texas Crim. App., 521; Johnson v. State, 28 Texas Crim. App., 26; Crass v. State, 31 Texas Crim. Rep., 314; People v. Harris, 95 Michigan Rep., 87; State v. McIvan, 125 N. C. Rep., 645: State v. Beird, 118 Iowa, 474; State v. Shadwell, 22 Mont. Rep., 559.

Clearly, appellant was not obliged to prove the acts were done in order to avail himself of the effect upon his mind of the specific acts of violence committed by the deceased, and coming to the appellant through the declarations of the deceased. He had the privilege of relying upon proof of these declarations, but, under the circumstances, we think he was not confined to proof of these declarations. He might have supported them by the evidence of third parties who could relate first-hand knowledge of the acts of the deceased. Dodson v. State, 44 Texas Crim. Rep., 200; Sprangler v. State, 41 Texas Crim. Rep., 430; Hyshaw v. State, 69 Texas Crim. Rep., 562, 155 S. W. Rep., 941; Bullock v. State, 73 Texas Crim. Rep., 419, 165 S. W. Rep., 199. In Hyshaw's case, *supra*, it is said where the accused testifies on the trial that he knew or had information concerning specific acts of violence of the deceased "then he would be permitted to go further and prove by others, who knew facts, the said specific acts or violence without going into details thereof." It is further said in the case in substance that when the appellant avails himself of this privilege, the State may rebut the theory presented by counter evidence or by cross-examination.

The rule concerning threats in homicide cases is somewhat analogous. The accused may act upon his information that threats against him have been made by the deceased. He is not confined to his information, however, and may prove that the threats were actually made, and upon this issue the prosecution may introduce controverting facts. In the light of the record and the authorities, we are of the opinion that the bill of exceptions in question presents no error either requiring or justifying a reversal of the judgment; and are also of the opinion that the appellant, not having availed himself of the privilege of proving the specific acts of violence attributed to the deceased otherwise than by the declarations of the deceased to the appellant, cannot justly complain of the reference to such failure in the argument of the case.

From Bill of Exceptions No. 4, taken to the cross-examination of the appellant, we quote: ''You did not appeal to any one for any protection when he brought that gun out there, did *you?*'' The defendant objected to this question on the ground that same was wholly irrelevant and immaterial, and might be prejudicial to the defendant.''

To the answer that he did not, objection was urged upon the same ground, and the court verbally requested to instruct the jury to disregard it. Mr. Branch, in Section 208 of his Annotated Texas Criminal Statutes, says: ''An objection to the evidence admitted, that it was immaterial and irrelevant and prejudicial to the defendant is too general to be considered, unless obviously the evidence would not be admissible for any purpose,'' citing the case of McGrath v. State, 35 Texas Crim. Rep., 422, and numerous others. 'This is not an arbitrary rule, but is related to and in aid of the reasonable and necessary requirement that a bill of exceptions to require consideration must sufficiently set out the proceedings and attendant circumstances to enable the appellate court to know certainly that an error was committed. Thompson v. State, 29 Texas Crim. App., 208; Barkman v. State, 41 Texas Crim. Rep., 108; Spencer v. State, 61 Texas Crim. Rep., 62; Eldridge v. State, 12 Texas Crim. App., 208; Cordova v. State, 6 Texas Crim. App., 447, and other cases in Branch's Annoted Texas Penal Code, Section 207. The burden on appeal is upon the appellant to show that the ruling complained of was erroneous and material. The correctness of the ruling is presumed, unless the contrary appears from the bill of exceptions. Vernon's Texas Crim. Statutes, Vol. 2, p. 537, note 21.

The bill in question fails to set out facts other than those disclosed by the· quotation, and is inadequate to inform the court of the surrounding circumstances, and to make it plain that the evidence was not admissible upon some issue, or made admissible by some phase of the procedure upon the trial. The question and answer, in our opinion, are not obviously improper and harmful. On the merits of the question we are referred to Newman v. State, 70 S. W. Rep., 951, in which this court expressed its disapproval of the question put to the accused on cross-examination: ''Did you file any complaint before any justice of the peace or any other officer authorided under the law to receive complaints, charging the deceased with making serious threats against your life, or asking that he be placed under a peace bond, after you heard of the threats against you by deceased?'' This question was much more specific than the one under consideration, and the objections addressed to it more comprehensive, and doubtless on review its materiality as impairing the appellant's right was made to appear by a bill of exceptions. Without challenging the correctness of the decision in that case as the matter was presented and applied to the record, we think the holding does not establish a rule of evidence which should be extended so as to embrace the facts disclosed by the bill in the present case and characterize them as obviously irrelevant

and harmful. It often happens that the acts and declarations of the accused in a homicide case, where the issue of self-defense arises, become admissible in his behalf. Koller v. State, 36 Texas Crim. Rep., 496; Smith v. State, 46 Texas Crim. Rep., 284; Pratt v. State, 50 Texas Crim. Rep., 233; Anderson v. State, 83 Texas Crim. Rep., 276, 214 S. W. Rep., 356; Branch's Annotated Texas Penal Code, Sec. 1929; Everett v. State, 30 Texas Crim. App., 682; Thomas v. State, 40 Texas Crim. Rep., 36. The jury were called upon to determine mainly from the testimony of the appellant whether, as viewed from his standpoint at the time the shot was fired, he was under a reasonable apprehension of danger. Having offered himself as a witness upon this issue, cross-examination which would lead to its solution was relevant and proper. Mr. Wharton, in his work on evidence, Section 55, Vol. 1, says:

"In homicide, evidence is relevant to show the good faith of the defendant who pleads that he was acting in self-defense after recent threats by the deceased to take his life and when some overt act accompanies such threats."

The state of mind of appellant was in question. Howard v. State, 25 Texas Crim. App., 691; Pratt v. State, 50 Texas Crim. Rep., 232; Branch's Annotated Texas Penal Code, Section 1929. The evidence available in the instant case was almost exclusively the testimony of the appellant. On this issue, we are of the opinion that the inquiry made, as developed by the bill, was not so obviously improper and hurtful as to entitle the appellant to have the judgment set aside. Touching the scope of cross-examination of the accused when he offers himself as a witness, Mr. Branch, in his Annotated Texas Penal Code, citing many decisions of this court, states the conclusion deduced therefrom as follows: "When defendant takes the stand as a witness he is subject to the same rules as any other witness. He may be contradicted, impeached, discredited, attacked, sustained, bolstered up, made to give evidence against himself, cross-examined as to new matter, and treated in every respect as any other witness testifying in behalf of defendant, except where some statute forbids certain matters to be used against him, such as proof of his conviction on a former trial of the present case, his failure to testify on a former trial or hearing, and the like." Huffman v. State, 28 Texas Crim. App., 177; Branch's Annotated Texas Penal Code, Sec. 147.

The deceased leased his farm to the appellant, making certain reservations. A controversy between the deceased and other persons developed and ripened into a suit over a strip of land claimed by the deceased. A fence was put around this land by the appellant, in the absence of the deceased, and a gate was made in the fence, enclosing land of deceased. This, according to appellant's theory, did not meet with the approval of the deceased, and he became quarrelsome and offensive by reason thereof. He was boarding at the home of the appellant. The homicide took place in the morning. According to ap-

pellant's testimony, while he was milking the deceased came into the lot with his left hand in his hip pocket, and said: "Maybe, by God, you want to start something this morning," to which appellant replied: "No, I don't want to have any trouble with you, but I have asked you to stay out of my house, and I want you to stay out. Don't come in there any more at all." Deceased replied that "By God" he would come in there when he got good and ready, and if appellant tried to stop him he would shoot hell out of him. The appellant, according to his testimony, had previously provided himself with shotgun shells to fit his Winchester gun; and after he finished milking he went to his room, loaded his gun, and sat down on the bed, and while there saw the deceased approaching on horseback, and, after hitching his horse, upon foot. Appellant said: "Mr. Ward looked like he was looking at me as he approached. After he got pretty close I moved from where I was sitting on the bed, and he was coming towards me, looking at me. I raised up, and as I did that Mr. Ward reached towards his pocket with his right hand. I grabbed my gun and shot him twice—shot fast, as quick as I could. The screen door was between us. I shot him because I thought he was going to shoot me. I thought this from threats that he had made and from the signs that he was making at the time."

During the cross-examination of the appellant, the screen door through which the shots were fired was exhibited and used. The use of the door and its introduction in evidence are complained of upon the ground that the identity of the condition of the door at the time of the trial with that at the time of the homicide was not established. Without rehearsing in detail the evidence touching the condition of the screen door at the time of the trial as compared with its condition immediately after the shots were fired, we have examined the record and find nothing that would justify sustaining the contentions made. It appeared from the testimony of the witness Bailey that he reached the premises a very short time after the deceased was killed and while his body was lying upon the ground, and remained there until the sheriff arrived. Subsequently, on another day, the appellant pointed out to the witness the place from which the shooting was done. the position of the deceased, and the holes in the screen door through which the shots were fired. When the appellant was on the stand he identified the door, and said: "I suppose these two holes are in about the same condition they were just after the shots were fired. I don't know as I looked at it afterwards and examined it. They look like they are in the same relative position now as they were at that time." The sheriff testified that he examined the door about eleven o'clock in the morning, the homicide having taken place about nine, and that he observed no difference in the condition of the door as it was exhibited upon the trial and its condition at the time mentioned.

Bill of Exceptions No. 6 recites that while Mrs. Durham was on the witness stand she was asked on cross-examination the following ques-

tion: "Now council for defendant asks you if you knew what was said and what happened inside of that barn when Ward went in after his saddle. Tell the jury whether or not there was time enough for anything much to have happened;" to which she replied: "No, there wasn't." This was objected to as calling for an opinion. The Bill is too meager to enable us to decide whether or not the evidence was admissible or hurtful. None of the surrounding facts are set out. Viewed in the light of the testimony of witness Mrs. Durham in the statement of facts, which we have examined, the Bill discloses no error. The witness stated on re-cross-examination that when she made the statement complained of she misunderstood the question, and said that she didn't know what happened while Ward was in the barn. We think, fairly construed, the record does not bear the interpretation that the opinion of the witness was taken as evidence.

Various charges were requested upon the subject of apparent danger. The general subject of apparent danger was embraced in the main charge, and in addition thereto the theory of apparent danger arising out of communicated threats. The subject of self-defense seems to have been submitted in an unexceptional way in the main charge; in fact, no exceptions were addressed to this. Two of appellant's special charges on that subject were given. One informed the jury that if the appellant feared an attack from the deceased, he had a right to arm himself and purchase shells. The other was in the following language:

"You are further instructed that if you believe from the evidence in this case, viewing it from the standpoint of the defendant at the time, that immediately before the killing of the said George Ward by the defendant, the deceased was advancing towards the defendant, and made a demonstration as if to draw a weapon, and from the conduct and manner of the deceased and the demonstration made by him (if any), and the defendant's knowledge of the character and disposition of the deceased, and the defendant was caused to have a reasonable expectation or fear of death or serious bodily injury, and that the defendant, acting under such reasonable expectation or fear and while such reasonable expectation or fear continued, shot and killed deceased, or if you have a reasonable doubt as to such facts, then you will acquit the defendant, although you may believe from the evidence that the deceased in fact had no weapon at such time, and that the defendant was in truth in no danger from an attack by the deceased."

In view of the court's charge on the subject of self-defense and the special charges given, there was no error in refusing other special charges, which embraced in varying phraseology the same subject-matter.

The suggestion that Special Charge No. 14, while incorrect as a legal proposition, was sufficiently pointed to call the court's attention to the omission in the charge to instruct the jury upon the right of the appellant to continue to shoot, is met by other parts of the record. On

the subject in the main charge the jury was told that the appellant was, under no circumstances, required to retreat, and in Special Charge No. 1, given at the request of the appellant, the jury was told in substance that if his life appeared in danger "he had a right not only to shoot and kill but to continue to shoot at deceased so long as the appearance of danger existed in the mind of the defendant."

Permitting the jury to take in their retirement the door which was introduced in evidence was not error. Article 751 Penal Code: Holder v. State, 81 Texas Crim. Rep., 194; 194 S. W. Rep., 163; Chalk v. State, 35 Texas Crim. Rep., 116, other cases listed Vernon's Texas Crim. Statutes, Vol. 2, p. 566.

We fail to find in the remarks of counsel such infringement of the right of legitimate argument as would be calculated to taint the verdict with passion or prejudice. In the light of the expressions on the subject often made by the court, we, without quoting them, express the conclusion that the remarks criticised were legitimate deductions from and comments upon various phases of the evidence.

Impressed with the view that the record discloses no errors authorizing a reversal of the judgment, its affirmance is ordered.

*Affirmed.*