The appellant, Joe Lamar Rowe, was convicted of sodomy in the first degree, a violation of § 13A-6-63, Code of Alabama 1975, *Page 1228 
attempted rape in the first degree, violations of §§ 13A-4-2
and 13A-6-61, Code of Alabama 1975, attempted sodomy in the first degree, violations of §§ 13A-4-2 and 13A-6-63, Code of Alabama 1975, and kidnapping in the first degree, a violation of § 13A-6-43, Code of Alabama 1975. He was sentenced to 60 years in the penitentiary for his conviction on sodomy in the first degree, 20 years in the penitentiary for his conviction on attempted rape in the first degree, 20 years in the penitentiary for his conviction on attempted sodomy in the first degree, and 60 years in the penitentiary for his conviction on kidnapping in the first degree.
The state's evidence tended to show that on November 15, 1993, the appellant abducted S.N. and took her to an abandoned house where he raped and sodomized her. S.N. is a licensed practical nurse and at the time of the attack she was working as a nursing assistant for a home health care company in Anniston. She testified that at about 4:00 p.m. on the day of the crime she left a patient's home and was driving back to her office. She stopped at a red light and saw the appellant. She knew who he was because his mother was one of her patients. She testified that he walked up to the passenger door of her vehicle and asked her if she would give him a ride to his mother's house. She told him that she could not because she had to return to her office. She testified that he then opened the door, got into her car, and "pulled out" a knife. He put the knife to her side, grabbed her hair, and said, "You are going to drive me wherever I want to go." He told her to drive him to Hobson City, where his mother lived.
S.N. further testified that she had $300 or $400 in her coat pocket to pay a man who was painting her house. The appellant took the money. She testified that the appellant then told her that he was going to kill her at 5:00 p.m. Following his instructions, she drove to an abandoned house in Hobson City that belonged to the appellant's family. Holding the knife to her throat, the appellant forced her inside the house. She testified that he told her to take off her clothes and that it would take him about 30 minutes "to do what he was going to do." He also told her again that he was going to kill her because he knew that she would go to the police. She testified that she took off her clothes. He also told her to "take her hair down," which she did.
S.N. then testified that he made her lie down on a mattress. He then unzipped his pants and exposed his penis. He told her to get in a certain position that he said he had seen depicted in a pornographic magazine. He then had sexual intercourse with her. After a few minutes, he told her to get on "all fours" so he could attempt anal intercourse. She testified that he touched his penis to her anus but that he was unable to penetrate. He then knocked her arms out from under her and made her roll over on her back. She testified that he hit her in the nose. After he hit her he "had his mouth to my vagina and the knife was still at my side."
She told him that she needed to use the bathroom and he told her that she would have to urinate on the mattress. He told her he was "going to do it one more time and then kill [her]." However, she testified that he was having trouble maintaining an erection. She told him, "Well, maybe if you take your pants down to your knees and I can pull my legs up to my chest, maybe you can penetrate." She testified that he agreed and when he tried to penetrate, she pushed him with her feet. The appellant fell backwards into the corner of the room. She grabbed her clothes from beside the bed and ran out of the house and to her car. She drove to her office.
When she arrived at the office she told her co-workers that she had been robbed, but she did not tell them immediately that she had been raped. Someone at her office called the Anniston Police Department. Officer Travis Bentley responded to the call and took a statement from her.
Later that evening, S.N. and her son, Robert, were driving to a restaurant in Oxford when they saw the appellant. Robert jumped out the car and chased him. S.N. stopped the car and ran into a nearby business, where an employee called the police. A few minutes later, the appellant was arrested by the Oxford Police Department. *Page 1229 
The next day, November 16, 1993, S.N. met with Investigator Tim Whatley and Investigator Pettus of the Anniston Police Department. She told them the details of what had occurred. Whatley obtained a search warrant for the house where the crime occurred. Whatley and Investigator Eddie Akers of the Anniston Police Department then executed the search warrant. Whatley testified that they seized several items, including a knife, a ponytail holder, a gold earring, a bank deposit slip, the business card of an attorney, three blankets from the bed, and a tube of cream.
The appellant raises four issues on appeal.
 I
The appellant first contends that the trial court erred in denying his motion to suppress the evidence seized during the search of the house because, he says, Investigator Whatley obtained the warrant by misrepresenting himself in his affidavit in support of the search warrant. The record, however, does not support this contention.
The record reflects that S.N. met with Whatley and Pettus but that Pettus was the only one who asked her questions. The appellant contends that as a result, Whatley could not have had personal knowledge of the contents of S.N.'s statement and that he therefore relied on Pettus to prepare the affidavit. However, because Whatley was present during the taking of S.N.'s statements, he did possess the requisite personal knowledge to prepare the affidavit in support of the search warrant. The appellant's contention is not supported by the record.
 II
The appellant next contends that the trial court erred in not suppressing evidence seized during the search that was not specifically listed in the affidavit. He contends that the knife seized by the police at the house was not listed in the search warrant and, therefore, that it should have been suppressed. We disagree.
 " 'The plain-view seizure of the items not listed in a search warrant is justified where the officer's intrusion into the residence is pursuant to a valid search warrant and the item seized is of an incriminating nature. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Mitchum v. State, 384 So.2d 1193
(Ala.Cr.App.), cert. denied, 384 So.2d 1205
(Ala. 1980).' "
Zumbado v. State, 615 So.2d 1223, 1239 (Ala.Cr.App. 1993), quoting Cowart v. State, 488 So.2d 497 (Ala.Cr.App. 1985) (emphasis omitted). Here, the officers were lawfully on the premises pursuant to a search warrant. The record reflects that the knife was found in plain view along with the other items and therefore was correctly seized.
 III
The appellant next contends that the trial court erred in denying his motion for a judgment of acquittal because, he says, there was insufficient evidence to support the jury's verdict.
 "In determining whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, we must accept as true the evidence introduced by the state, accord the state all legitimate inferences therefrom, and view the evidence in the light most favorable to the prosecution. McMillian v. State, 594 So.2d 1253
(Ala.Cr.App. 1991); Faircloth v. State, 471 So.2d 485 (Ala.Cr.App. 1984), aff'd, 471 So.2d 493
(Ala. 1985); Cumbo v. State, 368 So.2d 871
(Ala.Cr.App.), cert. denied, 368 So.2d 877
(Ala. 1979)."
Underwood v. State, 646 So.2d 692, 695 (Ala.Cr.App. 1993).
The state presented sufficient evidence from which the jury could find the appellant guilty of sodomy in the first degree, attempted rape in the first degree, attempted sodomy in the first degree, and kidnapping in the first degree. S.N. testified that the appellant forced her to drive to the abandoned house at knifepoint. She further testified he made her remove her clothes and that he had sexual intercourse with her. He attempted to have anal sex with her, but was unable to do so. The victim testified that the appellant then hit her and that he performed oral sex on her. The appellant attempted to *Page 1230 
have sexual intercourse with her again but she pushed him away and escaped.
The appellant testified that S.N. invited him into the car and the sexual acts were consensual.
 "Any inconsistencies and conflicts in the evidence were for the jury to resolve. This court is not a finder of fact and will not second-guess juries in their conclusions as to the facts of a case. ' "[V]erdicts rendered [on conflicting evidence] are conclusive on appeal." Johnson v. State, 555 So.2d 818, 820 (Ala.Cr.App. 1989).' Dailey v. State, 604 So.2d 436 (Ala.Cr.App. 1992). See also Woods v. State, 592 So.2d 631 (Ala.Cr.App.), writ quashed, 592 So.2d 636 (Ala. 1991)."
O'Barr v. State, 639 So.2d 533, 536 (Ala.Cr.App. 1993). The state presented sufficient evidence from which the jury could find the appellant guilty. "Where there is legal evidence from which the factfinder may, by fair inference, find the accused guilty, this court will not overturn the verdict." McDonald v.State, 586 So.2d 259, 261 (Ala.Cr.App. 1991). We will not substitute our judgment for that of the jury. Owens v. State,597 So.2d 734, 737 (Ala.Cr.App. 1992).
 IV
The appellant last contends that the trial court abused its discretion by allowing the state to cross-examine certain witnesses on collateral matters while, he says, denying the appellant the same opportunity. While the essence of justice is fairness, this issue was not preserved by objections at trial. This issue is raised for the first time on appeal. We will not consider matters that have not first been presented to the trial court. Cotton v. State, 639 So.2d 577, 581
(Ala.Cr.App. 1993).
For the foregoing reasons, the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.