On Application for Rehearing
The unpublished memorandum released March 26, 1999, is hereby withdrawn and the following opinion is substituted therefor. We are granting the Rule 39(k), Ala.R.App.P., motion and affirming.
Derek Harris was indicted for murder. The jury found Harris guilty of the lesser-included offense of manslaughter under §13A-6-3(a)(2), Ala. Code 1975, which defines heat-of-passion manslaughter. Harris was sentenced as a habitual felony offender to life imprisonment.
 Facts
On June 30, 1996, Elijah Causey went to Patricia and Fred McCary's house, which was behind Elijah's house. (R. 119-23.) Elijah was living with his girlfriend, Diane DeVaughn, and Diane's teenage son Garruth. Sandra Causey, Elijah's niece, was also visiting the McCarys. They were all "sitting around listening to music." (R. 123.) Patricia testified "someone was knocking, and I thought the knocking was at my door. They were knocking so loud. . . . When I went to the door I looked out and there wasn't anyone at my door. So, I looked across to [Elijah Causey's] back door, and there [were] two gentlemen back there, and I recognized them." (R. 125.) Patricia McCary and Sandra Causey both identified the two men as Terry Harris and Derek Harris. From the McCarys' house, Elijah yelled to the Harrises that Diane, who was the Harris's sister, was at work and that Garruth had gone swimming. Then, Elijah walked over to his house to talk to Terry and Derek. (R. 127.) Elijah said he needed to check on something in the oven anyway.
The McCarys and Sandra went inside the McCary's house and waited for Elijah. Patricia looked out the door but did not see the Harrises or Elijah. Patricia assumed they were still inside Elijah's house. (R. 131.) While Sandra was in the bathroom, she glanced out the window and saw a cream-colored Maxima automobile driving away from the Causey's house. (R. 147.) Anywhere from 3 to 30 minutes passed before Fred McCary went outside to look for Elijah. Fred McCary found Elijah in front of the McCary's porch. The coroner testified that Elijah had been shot in the chest and the arm. He also had stab wounds on his left and right arms. (R. 227-228, 236.)
Garruth DeVaughn arrived home at the time the McCarys were getting Elijah into Sandra's automobile to take him to the hospital. When Garruth went inside the house, he saw drops of blood on the kitchen *Page 942 
floor, and he found a bullet shell on the living room floor. He placed the shell on the nightstand. Garruth also saw blood on the living room floor. (R. 166-67, 169.) Elijah died as a result of his wounds.
The police arrived at Elijah's house an hour and a half after Fred McCary found Elijah's body. (R. 165-168.) The police found two more bullet shells. When Charles Underwood, an evidence technician for the Birmingham Police Department, arrived at the scene, the area and the evidence had been disturbed. Underwood testified that the "scene was disturbed. It had been handled. It had been cleaned up." (R. 190.) Underwood took photographs of the crime scene and dusted two spent casings for fingerprints; the results were negative. Because the crime scene had been disturbed, Underwood did not diagram the area or attempt to lift fingerprints from the residence. (R. 193.)
David Canty testified that on the day of Elijah Causey's murder, he was visiting Betty Stewart, Harris's mother. Derek Harris arrived at Betty Stewart's house around two or three o'clock that afternoon. (R. 88-89.) At one point, Harris and his brother, Terry, left in Harris's cream-colored Maxima to go to the store and to Elijah Causey's house to visit Diane DeVaughn. The Harrises returned to Stewart's house about an hour and a half later. (R. 103.) Canty gave an audiotaped statement to Sergeant Mimi Moorer that evening stating "they [the Harrises] said they were going to get some things straightened out. They were going to talk to him [Elijah Causey] and were they angry? Yeah." (R.93.)
Diane DeVaughn testified that shortly before the murder, Elijah Causey had prohibited Garruth from speaking to Michael DeVaughn, Garruth's biological father, when Michael telephoned Garruth. After Elijah refused to allow Michael to speak to Garruth, Michael telephoned Diane and Derek Harris's mother, Betty Stewart, and explained the situation. Betty Stewart then telephoned Elijah. Diane testified that "[a]s far as I know it was not a good conversation" between Stewart and Elijah. (R. 111-12.) When the telephone conversation between Betty Stewart and Elijah occurred is in dispute. Diane DeVaughn testified that the conversation was a month before the murder; Patricia McCary testified that it was the day before the murder. (R. 112, 135.)
 I.
Harris argues that the evidence failed to exclude every reasonable hypothesis except that of his guilt. He further argues that the evidence of provocation was insufficient to support a conviction for heat-of-passion manslaughter. At the close of the State's case and again at the close of the evidence, Harris moved for a judgment of acquittal as to murder. The trial court denied both his motions. The jury found Harris guilty of heat-of-passion manslaughter, and he was sentenced on September 28, 1998. Harris timely filed another motion for a judgment of acquittal on October 28, 1998, as to heat-of-passion manslaughter. In his post-adjudication motion for a judgment of acquittal, Harris alleged that the "State of Alabama failed to produce sufficient evidence to support a finding of guilt beyond a reasonable doubt of each and every element of the offense of manslaughter." (Supp.C. 11.) Harris also timely filed a motion for a new trial, stating similar grounds to those asserted in his motion for a judgment of acquittal. "The issue of sufficiency of the evidence is preserved for review by a defendant's motion for judgment of acquittal that is entered at the end of the state's case, at the close of the evidence, see A.R.Cr.P. 20.2(a), or after the verdict is entered, see A.R.Cr.P. 20.3. . . . A defendant may also challenge the sufficiency of the evidence when moving for a new trial under A.R.Cr.P. 24.1. . . ." Zumbado v. State,615 So.2d 1223, 1241 (Ala.Crim.App. 1993); see also Ryansv. State, 629 So.2d 799 (Ala.Crim.App. 1993). *Page 943 
Harris argues that there was insufficient evidence to convict him of manslaughter. On at least two occasions, Harris had the opportunity to object to the trial court's giving of the manslaughter instruction. However, he chose not to object. At the close of the State's case, Harris made a motion for a judgment of acquittal as to murder. In response to the motion, the trial court said, "All right. I'm going to let it go to the jury, fellows, on [heat-of-passion] manslaughter, as well as murder." (R. 263.) When the trial court placed defense counsel on notice that it was going to charge the jury on heat-of-passion manslaughter, there was no objection. After the trial judge instructed the jury as to murder and heat-of-passion manslaughter and asked the attorneys if they had any exceptions to the instructions, defense counsel stated that he had none. (R. 319.) Instead of objecting during the trial, Harris waited until after he was convicted of manslaughter to complain that the evidence was insufficient to convict him of heat-of-passion manslaughter.
In determining the sufficiency of circumstantial evidence to sustain a conviction, a reviewing court must
 "`view that [circumstantial] evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis of guilt, but whether a jury might reasonably so conclude.'"
Inmin v. State, 668 So.2d 152, 154 (Ala.Crim.App. 1995), quotingCumbo v. State, 368 So.2d 871, 874 (Ala.Crim.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979) (emphasis added in Inmin). Whether circumstantial evidence tending to connect the defendant to the crime excludes every reasonable hypothesis but that of guilt is a question for the jury. Inmin at 154. Moreover, "[c]ircumstantial evidence is entitled to the same weight as direct evidence, provided it points to the guilt of the accused."K.J. v. State, 690 So.2d 541, 545 (Ala.Crim.App. 1997). This court will not set aside a judgment of conviction based on insufficiency of the evidence unless, "allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the judgment is so decided as to clearly convince the reviewing court that it was wrong and unjust." Jackson v. State, 516 So.2d 726
(Ala.Crim.App. 1985).
Section 13A-6-2, Ala. Code 1975, provides:
"(a) A person commits the crime of murder if:
 "(1) With intent to cause the death of another person, he causes the death of that person or another person; or
 "(2) Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person;
". . . .
 "(b) A person does not commit murder under subdivisions (a)(1) or (a)(2) of this section if he was moved to act by a sudden heat of passion caused by provocation recognized by law, and before there had been a reasonable time for the person to cool and for reason to reassert itself. The burden of injecting the issue of killing under legal provocation is on the defendant, but this does not shift the burden of proof. This subsection does not apply to a prosecution for, or preclude a conviction of, manslaughter or other crime."
The present case is similar to Shiflett v. State, 507 So.2d 1056
(Ala.Crim.App. 1987). In Shiflett, Addie Nora Mae Shiflett was indicted for murder and was convicted of the lesser included offense of manslaughter. The evidence tended to show that on April 22, 1986, Shiflett's husband Rayburn Shiflett, the victim, Marquetta Davis, and three other men were driving around and drinking alcohol for four days. At times *Page 944 
during the four days, they were joined by Addie Shiflett, who did not drink. Rayburn and Davis had repeatedly left the Shifletts' house alone to drive around and drink. On Tuesday night, Barbara Lawhorn drove Addie Shiflett to look for her husband. When Addie arrived at the Grays' residence, she found her husband, Davis, and Davis's brother-in-law all sitting in the front seat of the Shiflett's automobile. Addie was carrying a hammer when she got out of Lawhorn's automobile. Addie approached the Shifletts' automobile, reached through the driver's side window, grabbed a whiskey bottle and poured out all of the whiskey. She then broke the whiskey bottle against the automobile. Addie then walked around to the passenger side of the automobile and broke out the window attempting to hit Davis with the hammer. The glass flew into the front seat and hit Davis, cutting her face. Rayburn Shiflett, Davis, and Davis's brother-in-law then got out of the automobile. Davis started yelling at Addie and everyone present started arguing. Addie Shiflett walked over to Lawhorn's automobile and retrieved a knife from her purse. Davis and Shiflett "scuffled" by the road and Shiflett stabbed Davis to death.
On appeal, Addie Shiflett argued that the evidence was insufficient to support her manslaughter conviction because, he says, the State failed to show that she acted recklessly or with legal provocation. In responding to this argument, this court stated:
 "We are of the opinion that the evidence presented by the State was sufficient to support a conviction of murder. . . .
 "Since we believe the evidence was sufficient to support a murder conviction, it necessarily follows that there was sufficient evidence to support the lesser included offense of manslaughter under the theory that the appellant acted recklessly or with legal provocation. . . .
". . . .
 "As for the appellant's argument that the `legal provocation' portion of the manslaughter statute is inapplicable, we must call the appellant's attention to Shultz v. State, 480 So.2d 73 (Ala.Crim.App. 1985), wherein this court recently addressed this very issue.
 "In Shultz, the appellant had been convicted of manslaughter as a lesser included offense of murder (with which he was originally charged). He based his case on a claim of self-defense under similar circumstances as those in the case at bar. The appellant in Schultz contended `that his defense was based on self-defense and not on the theory of legal provocation.' . . .
 "We stated that § 13A-6-3(a)(2) is designed to cover those situations where the jury does not believe a defendant is guilty of murder but also does not believe the killing was totally justified by self-defense.' . . ."
507 So.2d at 1058-59.
The principle in Shiflett — that if the evidence is sufficient to support a murder charge, it will support a lesser-included charge — is reasonable and fair; thereby bringing a just result. The undisputed evidence in this case was such that a reasonable jury could have convicted Harris of intentional murder. However, the jury convicted Harris of manslaughter. As a result, Harris received a lesser sentence than he could have, given the evidence. The evidence presented by the State showed that Harris and his brother, both angry, came looking for Elijah Causey. (R. 93.) Elijah Causey walked over to his house to meet the Harrises, who had been banging very loudly on his door. (R. 125, 127.) Elijah Causey was last seen at his back door with the Harrises. (R. 128.) A short time later, Harris's automobile was seen pulling away from the house and Elijah was found dead outside the McCary's house. (R. 147.) In addition, bloodstains and bullet shells were found inside Elijah's house. (R. 165-68.) This circumstantial evidence was sufficient for a *Page 945 
jury to reasonably infer that Harris committed the murder. Regardless of whether there was adequate evidence of provocation, the trial court decided to give the provocation instruction to the jury; Harris did not object. Harris gratuitously accepted the instruction on manslaughter, a lesser-included offense of intentional murder. For whatever reason, the jury chose to be lenient, convicting Harris of manslaughter, not murder. We will not allow Harris to now complain when the evidence was sufficient to convict him of murder. To find otherwise would allow an unjust result.
 II.
Harris argues that the prosecutor made an improper statement during closing argument and that, as a result, he was entitled to a new trial. Harris objected to the prosecutor's comment, and the trial court stated "I think Mr. Smith (prosecutor) is about to conclude, folks." (R. 309.) The trial court did not rule on Harris' objection. "In order to preserve an issue for appellate review, there must be an adverse ruling on the record." Gayle v.State, 616 So.2d 378 (Ala.Crim.App. 1993).
For the above-stated reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
UNPUBLISHED MEMORANDUM OF MARCH 26, 1999, WITHDRAWN; OPINION SUBSTITUTED; RULE 39(k) MOTION GRANTED; APPLICATION FOR REHEARING OVERRULED; AFFIRMED.
Long, P.J., and McMillan, Baschab, and Fry, JJ., concur.
 *Page 404