The appellant, David Kelly Dickey, was convicted of one count of second-degree assault, a violation of § 13A-6-21(a)(4), Ala. Code 1975. He was also convicted of three misdemeanor traffic offenses arising out of the same incident: failure to obey a police officer, a violation of § 32-5A-4, Ala. Code 1975; reckless driving, a violation of § 32-5A-190, Ala. Code 1975; and failure to wear a seat belt, a violation of § 32-5B-4, Ala. Code 1975. The circuit court sentenced Dickey to two years' imprisonment on the assault conviction. However, the court suspended that sentence and placed him on supervised probation for two years. For the misdemeanor convictions, the court ordered Dickey to pay fines and court costs. This appeal followed.
The evidence tended to show that on March 23, 2003, Dickey drove a friend to the Birmingham airport so that she could rent a car. Because vehicles were permitted to stop at the curb only momentarily to load or unload passengers and baggage, Dickey had to circle the airport terminal while waiting for his friend. After circling the airport several times, Dickey grew frustrated and pulled alongside the curb behind another vehicle from which baggage was being unloaded. As Dickey sat at the curb, Birmingham police officer James Hooie — who was directing traffic at the airport terminal — approached his vehicle. Anticipating that Officer Hooie intended to tell him to move his vehicle, Dickey — who was talking on a cell phone — rolled down his window and asked the officer if he wanted him to pull forward and "run over" the people who were unloading baggage from the vehicle in front of him.
Officer Hooie told Dickey that because his passenger was not at the curb ready to enter the vehicle, he should pull away from the curb and circle the terminal. Instead of moving the car as directed, Dickey began to argue with Officer Hooie and, in the course of the argument, uttered several profanities. At that point, Officer Hooie noticed that Dickey was not wearing his seat belt and asked for his driver's license and car registration. Rather than comply with Officer Hooie's instructions, Dickey stated, "No, I am moving" and began to drive away from the curb. Officer Hooie then ordered Dickey to stop the car and to produce the items he had requested. Dickey, disregarding the officer, stated, "No, I am f____ing moving!" Dickey then rolled up the window. Officer Hooie noticed that Dickey's car door was unlocked, so he opened the door, reached inside, and tried to put the transmission into park. When he did, Dickey immediately accelerated. Officer Hooie ran alongside the automobile with his arm inside the car as Dickey sped away. After a short distance, Dickey braked suddenly to avoid striking a pedestrian, causing Officer Hooie to fall to the pavement. Dickey continued to drive away from the airport; Officer Hooie picked himself up, got into his patrol car, and pursued Dickey toward the interstate.
After driving some distance along Airport Boulevard, Officer Hooie lost sight of Dickey's vehicle. As Officer Hooie started to turn back toward the airport, a bystander flagged him down and told him that the car he was pursuing had driven into a nearby cemetery. Officer Hooie drove into the cemetery where he found the car Dickey had been driving at the top of a hill. Neither Dickey nor the cell phone he had been using was in the vehicle. Further, when Officer Hooie conducted an electronic check of the vehicle's license plate number, he discovered that the car was not registered to Dickey. Officer Hooie radioed for assistance from other officers, while he remained with the car. Several minutes after the officers he had called for backup arrived, Officer Hooie *Page 753 
noticed a woman walking toward him. She told Officer Hooie that she was the owner of the vehicle and that Dickey had been driving the car. Hooie refused to allow her to take the vehicle out of the cemetery until Dickey returned. She telephoned Dickey on a cell phone and told him to return to the cemetery. Dickey returned to the cemetery, driving a rental car. At that point, Officer Hooie charged Dickey with three misdemeanor traffic violations. After signing the traffic citations, Dickey was allowed to leave the cemetery. Dickey was subsequently charged with the felony offense of second-degree assault.
At trial, two witnesses other than Officer Hooie testified that they observed Dickey driving erratically at the airport. In their opinion, Dickey was driving at a rate of speed that endangered pedestrians. Additionally, they testified that they saw Officer Hooie running alongside Dickey's automobile, then falling to the ground and being dragged a short distance before rolling away from the vehicle. The witnesses estimated Dickey was traveling approximately 30-35 miles per hour when he left the airport loading zone; the posted speed limit in the loading zone is 15 miles per hour.
Dickey testified in his own defense. He admitted that he became frustrated after driving around the airport terminal waiting for his friend to pick up her rental car. He was stopped behind another vehicle where people were unloading bags and passengers and had telephoned his friend from the car using his cell phone to ascertain her status when he noticed Officer Hooie standing beside his car. Angry at the delay, he rolled down the window and shouted expletives at Officer Hooie. When Officer Hooie asked to see his driver's license and car registration, Dickey stated, "Fine, I will move" and started to drive away. However, when Officer Hooie opened his car door, Dickey panicked and accelerated. Officer Hooie ordered him to stop the car, but Dickey continued driving. Dickey testified that he stopped for a pedestrian and then realized that Officer Hooie was no longer standing by his car. According to Dickey, he never drove more than 10-15 miles per hour during the incident. He stated that after he left the airport, he drove along Airport Boulevard for a short way and pulled into a cemetery near the airport. Dickey testified that he got out of the car, locked the door, and telephoned his friend — who had, by this point, picked up the rental car — and asked her to pick him up outside the cemetery. Dickey recounted to her what had happened. She then walked into the cemetery to retrieve the car. After talking with Officer Hooie, she telephoned Dickey and told him to return to the cemetery, which he did. Dickey denied having any intent to injure Officer Hooie.
 I.
Dickey contends that the trial court erred when it denied his motion for a judgment of acquittal, because, he says, the State did not present sufficient evidence to prove the elements of the offense of second-degree assault. Specifically, he claims that the State failed to prove that Officer Hooie suffered any physical injury or that Dickey possessed the requisite intent to cause physical injury.
Section 13A-1-2(12), Ala. Code 1975, defines physical injury as "[i]mpairment of physical condition or substantial pain." Officer Hooie testified that when Dickey abruptly accelerated and sped away from the scene, the car hit his shoulder; he testified that he also suffered physical injury in the form of abrasions on his elbows and knees sustained when he fell onto the pavement and that he suffered pain as a result of those abrasions. Photographs of Officer Hooie's abrasions were admitted *Page 754 
into evidence, showing the extent of his injuries. Not only did Officer Hooie suffer pain from his injuries, they also caused scarring. Thus, the jury concluded that Officer Hooie suffered physical injury as that term is defined in § 13A-1-2(12).
Dickey's second claim, that the State failed to prove that he had the requisite intent to injure Officer Hooie, is likewise without merit.
"`Intent, . . . being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.'" Seaton v.State, 645 So.2d 341, 343 (Ala.Crim.App. 1994) (quoting McCordv. State, 501 So.2d 520, 528-29 (Ala.Crim.App. 1986)). Intent "`"may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances."'" Farrior v.State, 728 So.2d 691, 695 (Ala.Crim.App. 1998) (quoting Jonesv. State, 591 So.2d 569, 574 (Ala.Crim.App. 1991), quoting in turn, Johnson v. State, 390 So.2d 1160, 1167 (Ala.Crim.App. 1980)). "`The intent of a defendant at the time of the offense is a jury question.'" C.G. v. State, 841 So.2d 281, 291
(Ala.Crim.App. 2001) (quoting Downing v. State, 620 So.2d 983,985 (Ala.Crim.App. 1993)).
The evidence established that Dickey was aware that, when he started accelerating, Officer Hooie was hanging onto the vehicle and that he continued hanging onto the vehicle for some time after that. After Dickey stopped the car to avoid hitting a pedestrian, he noticed that Officer Hooie was no longer standing beside the vehicle. Dickey himself testified that he panicked when Officer Hooie opened the car door, and that, rather than stopping, he continued to drive away. Given Dickey's conduct toward Officer Hooie, we conclude that there was sufficient evidence from which the jury could conclude that Dickey had the intent to injure Officer Hooie.
 "A reviewing court, when examining the sufficiency of the evidence on a motion for a judgment of acquittal,
 "`must accept the evidence presented by the state as true, must view that evidence in a light most favorable to the state, and must accord the state all legitimate inferences from the evidence. Rowe v. State, 662 So.2d 1227 (Ala.Cr.App. 1995). Where there is legal evidence from which a jury could by fair inference find a defendant guilty, a trial judge should submit the case to the jury. Id.'
 "State v. Grantland, 709 So.2d 1310, 1311-12
(Ala.Cr.App. 1997)."
Hayes v. State, 717 So.2d 30, 33 (Ala.Crim.App. 1997).
 II.
Dickey next contends that the trial court erred when it refused to give the jury curative instructions following two comments made by the prosecutor during closing argument that Dickey alleges were improper. Dickey alleges that one statement suggested that Dickey had prior convictions of which the jury was not made aware and that the second statement deviated from the language of the indictment. The trial court determined that neither comment warranted a curative instruction.
After both sides had rested, the parties presented their closing arguments. Dickey made no objections during the prosecutor's initial closing argument. Dickey then made his closing argument, during which the prosecutor objected several times, causing the trial court to instruct the jury that the court — not counsel — would be the source of the law in the case. The court further cautioned the jury that it was improper for counsel to comment upon the *Page 755 
status of the charged offenses — i.e., whether they were felonies or misdemeanors — and that it should not consider the classification of the offense or the punishment involved when determining Dickey's guilt. During his rebuttal argument, the prosecutor made a comment suggesting that Dickey was unwilling to take personal responsibility for his actions, stating: "That is his pattern. That is what he does. And I bet he got away with it a lot." (R. 119.) When defense counsel objected, the prosecutor added, "I don't mean criminally. I mean throughout the course of his life." (R. 119.) The trial court — without ruling on Dickey's general objection — stated merely, "Let's proceed," and the prosecutor continued his rebuttal argument.
Because Dickey did not receive an adverse ruling on his objection, this issue is not properly before this Court for appellate review. See, e.g., Harris v. State, 745 So.2d 940,945 (Ala.Crim.App. 1999) (defendant must receive an adverse ruling on an objection to the prosecutor's closing argument to preserve the issue for review). Moreover, because the prosecutor was merely arguing his impressions based upon the evidence, the comment was not improper. See, e.g., Reeves v. State,807 So.2d 18, 45 (Ala.Crim.App. 2000) (quoting Rutledge v. State,523 So.2d 1087, 1100 (Ala.Crim.App. 1987), rev'd on other grounds,523 So.2d 1118 (Ala. 1988)) (prosecutor, as well as defense counsel, has a right to present impressions from the evidence, if reasonable, and may argue every legitimate inference therefrom).
The second allegedly improper comment occurred when the prosecutor described Dickey's conduct, noting: "He knew that [Officer Hooie] had told him to stop, and he knew that that officer was in the car. And this is assault with a motor vehicle." (R. 120.) Again, defense counsel made a general objection and asked to approach the bench; the trial court over-ruled counsel's request, but advised counsel that he could make a record later. At the conclusion of the prosecutor's rebuttal argument, defense counsel noted that the prosecutor's comment regarding "assault by motor vehicle" in effect charged an offense different from the offense charged in the indictment, and he requested that the court give curative instructions regarding the alleged improper comment. The prosecutor responded, stating that he was merely describing the method by which the assault had occurred, rather than the offense with which Dickey was charged. Having already advised the jury that the court — and not the attorneys — would be the source of the law applicable to the case, the court denied Dickey's request for curative instructions. We question whether Dickey's objection to this comment was preserved for appellate review. However, given that the trial court indicated that it would entertain Dickey's objection at a later time, we will address the merits of this claim.
Here, the evidence established that Dickey used a vehicle in his assault of Officer Hooie. Thus, based on the particular circumstances of this case, the prosecutor's remark that Dickey's actions constituted "assault with a motor vehicle" described the factual basis for the offense, rather than suggested that he was charged with an offense different than the offense charged in the indictment. Again, the prosecutor was simply presenting his impressions from the evidence. See Reeves, 807 So.2d at 45. Moreover, when instructing the jury on the applicable law, the trial court reminded the jury that the argument of counsel did not constitute evidence and the jury is presumed to follow the trial court's instructions. See Bryant v. State, 727 So.2d 870,874 (Ala.Crim.App. 1998) (citing Holland v. State,588 So.2d 543, 549 (Ala.Crim.App. 1991)). *Page 756 
Because the prosecutor's comments did not warrant any curative instructions, the trial court did not err in denying Dickey's request.
 III.
Dickey also contends that he is entitled to a new trial because of alleged juror misconduct. Specifically, he contends that one of the jurors made a comment to the alternate juror after the conclusion of the State's case-in-chief that he had already made his decision about the case. Because this issue was never raised at the trial-court level and is raised for the first time on appeal, it is not properly before this Court for appellate review.
"Review on appeal is restricted to questions and issues properly and timely raised at trial." Newsome v. State,570 So.2d 703, 717 (Ala.Crim.App. 1989). "An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented." Pate v.State, 601 So.2d 210, 213 (Ala.Crim.App. 1992). Because this issue is raised for the first time on appeal, there is nothing in the record to support Dickey's claim.
 IV.
Lastly, Dickey contends that his convictions for reckless driving, failure to obey a police officer, and failure to wear a seat belt should be reversed based on the prosecution's failure to enter into evidence the municipal ordinance upon which the complaint against Dickey charging those offenses was based.
The record contains copies of three Uniform Traffic Ticket and Complaints charging Dickey with the aforementioned offenses. Each of those citations stated that Dickey was charged with violating Birmingham Municipal Ordinance No. 11-7-1, which adopted the applicable section of the Alabama Code of 1975. A review of the record reveals that the prosecution failed to introduce into evidence the municipal ordinance upon which the aforementioned charges were based and that the trial court did not take judicial notice of the relevant municipal ordinance. Both this Court and the Alabama Supreme Court have held on numerous occasions that "in a criminal prosecution for violation of a city ordinance the [prosecution] must plead and prove the ordinance." See, e.g., Exparte Maxwell, 439 So.2d 715, 716 (Ala. 1983); Truman v. Cityof Enterprise, 606 So.2d 1151, 1153 (Ala.Crim.App. 1992). Because the prosecution omitted a necessary element of the charged offenses, the trial court erred in denying Dickey's motion for a judgment of acquittal on those three offenses.
Based on the foregoing, we affirm Dickey's conviction for second-degree assault. However, Dickey's convictions for reckless driving, failure to obey a police officer, and failure to wear a seat belt must be reversed, and, under the authority of Burks v.United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), a judgment must be rendered in favor of the appellant. See alsoPeters v. City of Phenix City, 589 So.2d 800 (Ala.Crim.App. 1991); Ingram v. City of Dothan, 588 So.2d 943 (Ala.Crim.App. 1991); and Prather v. City of Hoover, 585 So.2d 257
(Ala.Crim.App. 1991).
AFFIRMED IN PART; REVERSED IN PART; AND JUDGMENT RENDERED IN PART.
McMILLAN, P.J., and COBB, BASCHAB, and SHAW, JJ., concur. *Page 757