PER CURIAM.
The district attorney for the Thirty-Seventh Judicial District filed this petition for a writ of mandamus requesting that we direct Judge John V. Denson II to vacate his order setting aside the jury’s verdict finding Mary Maxine Neel guilty of murder.
In May 2006, Neel was indicted for killing her son-in-law Glenn Hall, a violation of § 13A-6-2, Ala.Code 1975. On November 6, 2008, the jury found Neel guilty of murder. On November 18, 2008, Neel moved to set aside the jury’s verdict and for a judgment of acquittal or a judgment finding her guilty of the lesser offense of manslaughter based on self-defense. After a hearing on April 9, 2009, Judge Den-son issued a 39-page order granting Neel’s motion and vacating the jury’s verdict *188 against Neel. The State then filed this mandamus petition.[1]
“Mandamus is an extraordinary remedy, but is appropriate in exceptional circumstances which amount to judicial usurpation of power.” Ex parte Nice, 407 So.2d 874, 877 (Ala.1981). Mandamus has been used to review a circuit court’s ruling setting aside a jury’s guilty verdict, if that ruling is beyond the scope of Rule 20.3, Ala. R.Crim. P. See Ex parte Nice and State v. Grantland, 709 So.2d 1310 (Ala.Crim.App.1997). “[T]he jury is the arbiter of the credibility of witnesses in Alabama; therefore, the grant of supervisory mandamus by the Court of Criminal Appeals to prevent the trial judge from sitting as a ‘13th juror’ [is] appropriate.” Nice, 407 So.2d at 882.
Rule 20.3, Ala. R.Crim. P., authorizes a trial court to set aside a jury’s guilty verdict.[2] However, that authority is not unlimited. In discussing the scope of Rule 20.3, this Court in State v. Grantland, supra, stated:
“Although Rule 20.3, Ala. R.Crim. P., clearly authorizes a trial judge to grant a motion for a judgment of acquittal after the jury has returned a guilty verdict, that rule does not permit a judge to enter a judgment of acquittal on grounds other than those provided for under Rule 20 generally.[3] A motion for a judgment of acquittal tests the legal sufficiency of the evidence. Sutiles v. State, 574 So.2d 1012 (Ala.Cr.App.1990); Metzger v. State, 565 So.2d 291 (Ala.Cr.App.1990); see, generally, Committee Comments, Rule 20.1, Ala. R.Crim. P. When presented with a challenge to the sufficiency of the evidence, the trial court, and any reviewing court, must accept the evidence presented by the state as true, must view that evidence in a light most favorable to the state, and must accord the state all legitimate inferences from the evidence. Rowe v. State, 662 So.2d 1227 (Ala.Cr.App.1995). Where there is legal evidence from which a jury could by fair inference find a defendant guilty, a trial judge should submit the case to the jury. Id. Moreover, where there is sufficient legal evidence to submit the case to the jury and the jury has considered that evidence and rendered its verdict, it is not proper for the trial court, or a reviewing court, to substitute its judgment for that of the jury. Winters v. State, 673 So.2d 786 (Ala.Cr.App.1995); Rowe, 662 So.2d 1227. It is not the function of the court to assess the credibility of witnesses, weigh the evidence, or substitute its judgment as to guilt or innocence for that of the jury. Porter v. State, 666 So.2d 106 (Ala.Cr.App.1995).”
709 So.2d at 1311-12.
Section 13A-3-23, Ala.Code 1975, defines the law on self-defense in Alabama, *189 and, at the time the events in this case occurred, stated, in part:[4]
“(a) A person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for the purpose. A person may use deadly physical force if the actor reasonably believes that such other person is:
“(1) Using or about to use unlawful deadly physical force; or
“(2) Using or about to use physical force against an occupant of a dwelling while committing or attempting to commit a burglary of such dwelling; or
“(3) Committing or about to commit a kidnapping in any degree, assault in the first or second degree, burglary in any degree, robbery in any degree, forcible rape or forcible sodomy.”
A transcript of the trial proceedings in the Lee Circuit Court, including audiotapes of the 911 calls, are attached as exhibits to the State’s mandamus petition. The record shows that the victim was married to Neel’s daughter, Christy Hall, but divorce proceedings had been initiated. On the morning of February 28, 2006, Hall arrived at Neel’s house around 7:00 a.m. He told Neel that he had come to see his wife Christy. Christy brought her children to Neel’s house every morning so that they could catch the school bus there. When Hall arrived Neel was in bed, and she answered the door in her nightgown. She invited Hall in the house while she got dressed. When she went back to the kitchen she heard Christy’s vehicle approaching the house. Neel and Hall walked up to Christy’s vehicle. Hall tried to get Christy to get out of her car and talk to him. She refused. Hall got angry. Christy pulled away from the house in her car and Hall left. Neel said that she telephoned Christy to tell her what happened, that she got her gun from her bedroom, and that she put the gun on top of the refrigerator near the side door to her house.
Several minutes later Hall returned to Neel’s house and went to the side door. In the meantime, Christy had returned, and Neel, her husband, Christy, and her grandson were in the Neel home. The door to the house was closed and Hall was in the carport talking through the door. Neel’s husband talked to Hall. • Neel said that she got the gun off the refrigerator and told her husband to open the door. Hall was standing in front of the door and she pointed the gun at him and told him to leave. He moved a step toward her and Neel fired, hitting him in the chest. Neel said that she knew that Hall would hurt her daughter and she could not believe that Hall would not leave when he saw her with the gun. The facts set out above are based on Neel’s statement to police. There was no physical evidence indicating that Hall was armed when he confronted Neel through the side door of her home.
Audiotapes of the 911 calls reflect that the first call was received at around 6:20 a.m. on the morning of February 28 and was from Neel. Neel, who sounds very calm, asks that police come to her residence because her son-in-law was there, that he had been ordered to stay away from her daughter, and that he was threat *190 ening her daughter. The second 911 call was from Christy. Christy told the operator that her husband was at her car, that he has been ordered to stay away from her, and that he had threatened her. The third 911 call, from Christy, was made immediately after Hall was shot. Christy told the operator that her mother had shot Hall. You can also hear her say: “Put down the gun.” The last call is from Neel. Neel told the operator that she has shot her son-in-law in the chest. She said: “I thought if he saw the gun he would go away. I was, I didn’t mean to shoot him.” (R. 178.)
Neel’s statement to police differed in one aspect from one of her 911 calls. In the statement she says “Glenn [the victim] had been clean for a while and he did not look as bad as I had seen him the past. So I do not think that he was messed up because I have seen him messed up before.” (R. 297.) However, during one of the 911 calls, Neel tells the operator: “He just came up here and he is so messed up. He’s talking all kind of crazy stuff.... And I know he is on cocaine.” (R. 169.)
Captain Van Jackson of the Lee County Sheriffs Department testified that he responded to a 911 call at the Neel house and spoke to Hall before he was transported to the hospital. He said that Hall said to him: “[T]hat bitch shot me ... just shot me in cold blood.” (R. 322.)
The State also presented evidence indicating that Hall and Neel had been having a sexual relationship, that Neel had made statements that “It would be better if Hall was just gone,” that Neel had previously shot at Hall twice, and that Hall had told a friend that Neel was plotting to set him up.[5]
Evidence was also presented indicating that Hall had threatened Christy, that police had been called to their residence several times before the shooting, and that Hall had a severe drug problem. The coroner also testified that Hall had cocaine in his system at the time of his death.
Neel did not testify at trial. She relied on her statement and the audiotapes of the 911 calls to support her claim that she acted in self-defense.
In the circuit court’s lengthy order setting aside the jury’s verdict, the court wrote, in part:
“One possible explanation of why the jury in this case returned a verdict of guilty in spite of the lack of sufficiency of the evidence, is that they may have been confused about the self-defense charge given by the Court.
[[Image here]]
“An additional factor may have contributed to the jury’s finding of guilty and failure to find the Defendant not guilty by reason of self-defense, was the difficulty in hearing the audiotapes which contain most of the evidence of self-defense in this case. Another factor may have been that the jury did not have sufficient knowledge or understanding of the complete hospital records from Bradford [Health Services Clinic] which clearly show the seriousness of Hall’s drug problem and the threats he made to kill Christy. Furthermore, the State placed great emphasis on the fact that Hall was not armed, though that is not dispositive of a question of self-defense.
[[Image here]]
*191 “It is the unusual case in which the evidence presents no conflict, and it is left to the court to determine the question of self-defense as a matter of law. The instant case falls within this category, for there is only one version of the events that occurred on February 28, 2006, and this Court must accept that account as true. There is no dispute as to what took place, and this Court is not faced with a question of which witnesses were more credible and what evidence is more believable. The quality of the evidence is not at issue here, but only whether there is the quantum of evidence necessary to submit the question to the jury. The entirety of the evidence clearly establishes the Defendant’s belief that there was a real and apparent necessity to strike in order to defend Christy’s life and her own life, and there is no evidence tending to prove otherwise.”
(Emphasis added.)
Typically, the question of whether a killing is justified turns on the credibility of the defendant’s version of the events that led him or her to act in self-defense. As this Court has often stated:
“ ‘Where, as here, the killing was admitted, the question of whether or not it was justified under the theory of self-defense was for the jury.’ Townsend v. State, 402 So.2d 1097, 1098 (Ala.Cr.App.1981). The issue of self-defense invariably presents a question for the jury, whose verdict will not be disturbed on appeal. ‘[E]ven if the evidence of self-defense is undisputed, the credibility of the defendant with respect to the evidence of self-defense is for the jury, and they may, in their discretion, accept it as true or reject it.’ Mack v. State, 348 So.2d 524, 529 (Ala.Cr.App.1977).
“This Court’s observation in Hilliard v. State, 610 So.2d 1204[, 1205] (Ala.Cr.App.1992), a recent case with similar facts, is applicable here:
“ ‘The only evidence at trial concerning the appellant’s theory of self-defense was the appellant’s testimony in which he stated that he stabbed the victim only after the victim pulled a knife on him. The jury does not have to accept the accused’s version of what happened.
“ ‘ “Whether the killing of another was justified as an act of self-defense is a question for the jury, Turner v. State, 160 Ala. 40, 49 So. 828 [ (1909) ]; and this is true even though the defendant’s testimony as to how the difficulty occurred is un-contradicted.”
“ ‘Collier v. State, 49 Ala.App. 685, 275 So.2d 364, 367 (1973). “The weight and credence given the testimony of the accused as to the issue of self-defense is a question for the jury.” Garraway v. State, 337 So.2d 1349, 1353 (Ala.Cr.App.1976). See also Atchley v. State, 393 So.2d 1034, 1051 (Ala.Cr.App.1981); Warren v. State, 380 So.2d 305, 307 (Ala.Cr.App.1979), cert. quashed, 380 So.2d 307 (Ala.1980); Graham v. State, 339 So.2d 110, 113 (Ala.Cr.App.), writ denied, 339 So.2d 114 (Ala.1976).’ ”
Quinlivan v. State, 627 So.2d 1082, 1087 (Ala.Crim.App.1992).
“[T]he question of whether the appellant was in actual or apparent immediate peril so as to justify the use of physical force in self-defense is a question of fact to be decided solely by the jury, after appropriate instruction by the court as to the application of the term. Lemley v. State, 599 So.2d 64, 74 (Ala.Cr.App.1992).”
Moore v. State, 659 So.2d 205, 208 (Ala.Crim.App.1994).
*192 “ ‘The law of self-defense makes use of (1) rules, and (2) the reasonable-person standard. The court determines what the rules are, but it is for the jury to determine whether the standard has been met by the evidence in the particular case.’ R. Perkins & R. Boyce, Criminal Law 1116 (3d ed. 1982). ‘It is to be noted that reasonableness is determined by a standard — a reasonable person under like circumstances — and the determination is made by the jury.’ Perkins, at 1117.”
King v. State, 478 So.2d 318, 321-22 (Ala.Crim.App.1985).
“ ‘ “Only when all the evidence is undisputed and, clear should a court dispose of a murder or manslaughter charge by acquittal without tendering the issue of self-defense to the jury (cases cited). Rarely, then, is self-defense declared by law so as to bar the submission of the homicide offense altogether.” ’ ”
Lockett v. State, 505 So.2d 1281, 1285 (Ala.Crim.App.1986), quoting State v. Thornton, 532 S.W.2d 37, 42-43 (Mo.Ct.App.1975), quoting in turn State v. Jackson, 522 S.W.2d 317, 319 (Mo.Ct.App.1975).
The Lockett court further noted the rarity of a trial court’s entry of a judgment of acquittal on the issue of self-defense. The court stated:
“On rare occasions, the Alabama courts have reversed the trial court for its failure to direct an acquittal verdict where the prosecution’s evidence in presenting the evidence of the killing also presented undisputed evidence of self-defense. See e.g., Bishop v. State, 23 Ala.App. 109, 121 So. 455 (1929); Simmons v. State, 22 Ala.App. 126, 113 So. 466 (1927).[6] These two cases have been cited as authority for the following general principle: ‘If the undisputed evidence shows clearly that the accused was in actual or apparent imminent peril and was unable to retreat, and there is no evidence warranting a finding that he was at fault, he is entitled to have, the jury instructed to return a verdict of not guilty.’ C. Gamble, McElroy’s Alabama Evidence § 457.02(7) (3d ed. 1977). See also Hamby v. State, 254 Ala. 139, 47 So.2d 218 (1950); Thompson v. State, 376 So.2d 761, 764 (Ala.Cr.App.), rev’d on other grounds, 376 So.2d 766 (Ala.1979) (wherein the court noted that ‘[wjhere the undisputed evidence clearly shows the victim to be at fault, the accused may be entitled to a directed verdict’).
“More particularly apropos to the instant facts is Pratt v. State, 50 Tex.Cr.R. 227, 96 S.W. 8, 10 (1906), where the prosecution, ‘to a very considerable extent, relied upon the admissions or confessions of appellant’ which established, not only that he killed the victim, but that he did it in self-defense. There was no eyewitness to the killing. Id. The court held that, where the criminating evidence consists almost entirely of appellant’s admission that he killed the victim, the prosecution has the burden to prove the falsity of the exculpatory portion of appellant’s statement. Id. (Relying on Jones v. State, 29 Tex.App. 20, 13 S.W. 990 (1890)).
“Another court stated the general principles applicable to the prosecution’s use of the defendant’s statement, which confirmed the defendant’s commission of the killing as well as justification by self-defense, as follows:
“ ‘The prosecution, having presented as a part of its case the statement of defendant as to how the killing *193 occurred, is bound by that evidence in the absence of proof to the contrary. People v. Coppla, 100 Cal.App.2d 766, 769, 224 P.2d 828 [ (1950) ]. If there be any well-established circumstance which may be reasonably regarded as incompatible with the theory that the killing was justifiable, the trier of fact, from a consideration of all the evidence, is warranted in finding that the act amounted to an unlawful homicide. People v. Acosta, 45 Cal.2d 538, 541, 290 P.2d 1 [ (1955) ].’
“People v. Collins, 189 Cal.App.2d 575, 11 Cal.Rptr. 504, 515 (Dist.Ct.App.1961). That court reversed the appellant’s voluntary manslaughter conviction upon its finding that the appellant’s statement or the other evidence offered nothing which ‘may be reasonably regarded as incompatible with the theory that the killing was justifiable.’ Id.
“Thus, from the fact that the prosecution’s use of Lockett’s admissions presented exculpatory as well as inculpato-ry evidence does not follow the mandate that Lockett was entitled to a judgment of acquittal.
“ “Where the defendant’s statements to witnesses for the state as to what took place between the deceased and himself are shown, the jury need not consider them to the exclusion of all other facts and circumstances bearing on the question of self-defense. Thé state is not precluded by a confession of the defendant that he killed the deceased in self-defense.... ’
“3 Warren on Homicide § 285, p. 330 (1938) (footnote omitted). We must look to the remainder of the prosecution’s evidence to determine whether any contradiction of Lockett’s admissions existed or any evidence was presented which generated reasonably different inferences.
“In applying the enunciated principles, we hold that this case is not the rare and unusual situation where the proof uncontradictedly and .clearly established that Lockett was forced to kill to defend himself or others. Compare Kent v. State, 367 So.2d 508 (Ala.Cr.App.1978), cert. denied, 367 So.2d 518 (Ala.1979).”
505 So.2d at 1285-86.
Neel did not testify at trial; she relied on her statement to police and the audiotapes of the 911 calls. Neel’s statement was not totally consistent with her 911 calls. In one 911 call Neel said that Hall was “messed up” and on cocaine. However, in her statement to police she said that she did not think Hall was “messed up because [she] had seen .him messed up before.” Also, before the shooting when Hall first came to her residence, Neel invited Hall into her home while she got dressed — an act inconsistent with a person who is in fear for her life or the life of another. There was no physical evidence indicating that Hall was armed with a deadly weapon, nor did Neel say in her statement that Hall was armed. Neel told her husband to open the door while she was armed with a gun, thereby escalating the confrontation. Neel knew that police had been called to the residence and were on their way. Hall also told Captain Jackson that Neel shot him “in cold blood.” The State also presented evidence that was relevant to Neel’s state of mind at the time of the shooting — evidence the circuit court chose to ignore. The credibility of Neel’s version of the events was pivotal in this case because no eyewitness testified. The evidence tended to establish “reasonably different inferences.” This is not the “rare and unusual situation where the proof uncontradictedly and clearly established that [Neel] was forced to kill to *194 defend [herself] or others.” Lockett, 505 So.2d at 1286.
By finding Neel guilty of murder the jury chose not to believe Neel’s account of the events that led to Hall’s death. The jury was free to make this decision based on its weighing of the evidence. The circuit court went behind that determination and made credibility choices based on its interpretation of the evidence. “‘Under our system of jurisprudence a properly instructed jury of citizens decides whether witnesses are credible. The trial judge is deemed to have no special expertise in determining who speaks the truth.’ ” Ex parte Nice, 407 So.2d 874, 879 (Ala.1981), quoting United States v. Cravero, 530 F.2d 666, 670 (5th Cir.1976). “[C]redibility questions are within the exclusive province of the jury.” Frazier v. State, 663 So.2d 1035, 1037 (Ala.Crim.App.1995). As we stated in Grantland:
“In Ex parte Nice, 407 So.2d 874 (Ala.1981) ... the Alabama Supreme Court recognized that exceptional circumstances may arise in a criminal case that present a compelling need for the issuance of a writ of mandamus to countermand a judicial usurpation of power and to prevent a gross disruption in the administration of criminal justice. In Nice, the Alabama Supreme Court upheld this court’s issuance of a writ of mandamus directing the trial court to rescind its order granting the defendant’s motion for a new trial and to reinstate the jury’s guilty verdict where it was apparent from the record that, although there was sufficient legal evidence to submit the case to the jury, the trial court- had granted the defendant’s motion for a new trial based on the trial judge’s personal belief that the victim’s testimony was ‘dubious.’ Nice, 407 So.2d at 879. Because it was apparent that the trial judge had not based its grant of the new trial motion upon a finding that the state had failed to prove its case as a matter of law, but rather that he had assumed the role of a ‘thirteenth juror,’ who would have reached a different decision from the one reached by the other 12 jurors, Nice, 407 So.2d at 881-82, the Supreme Court found that the trial judge had exceeded his authority. Accordingly, the Supreme Court held that it was appropriate to direct the trial judge to set aside his grant of the defendant’s motion for a new trial and to reinstate the jury’s verdict of guilt. The Supreme Court concluded that it was ‘unimportant’ that the state had sought review of the trial judge’s ruling through mandamus, its only available remedy under the circumstances, and not by direct appeal, which is a remedy available to the Federal Government in such cases, because the record established that the trial judge was ‘guilty of a “usurpation of power,” as these terms are used in determining the propriety of a grant of mandamus.’ Nice, 407 So.2d at 879.”
709 So.2d at 1313-14.
Here, the ultimate question — whether Neel acted in self-defense — was a question for the finder of fact — the jury. The circuit court usurped the jury’s exclusive fact-finding role by setting aside the jury’s verdict in this case. Judge Denson acted beyond the scope of Rule 20.3, Ala. R.Crim. P. The State has met its burden of establishing the prerequisites for the issuance of a writ of mandamus. See Grantland, supra. Accordingly, we grant the State’s petition for a writ of mandamus and direct Judge Denson to set aside his order vacating the jury’s verdict finding Neel guilty of murder and to sentence Neel in accordance with her conviction for murder.
*195 PETITION GRANTED; WRIT ISSUED.
WISE, P.J., and WELCH, WINDOM, KELLUM, and MAIN, JJ., concur.

. This petition, filed within seven days of the order that is the subject of this petition, was timely. See Ex parte Thomas, 828 So.2d 952 (Ala.2001).

. Rule 20.3(a), Ala. R.Crim. P., provides, in part:
"After a verdict or the entry of a judgment of conviction, the defendant may move for a judgment of acquittal, or the court, on its own motion, may grant a judgment of acquittal."

3.Rule 20.1(a), Ala. R.Crim. P., states:
"The court, on motion of the defendant stating the grounds therefor, or on its own motion, shall direct the entry of a judgment of acquittal as to any charged offense, or as to any lesser included offense, for which the evidence is insufficient to support a finding of guilty beyond a reasonable doubt."
(Emphasis added.)

. Section 13A-3-23, Ala. Code 1975, was amended effective June 1, 2006, to rewrite section (a) and to add a subsection (4). However, the events in this case occurred before the statute was amended. Thus, we look to the previous statute. See State v. McCall, 995 So.2d 183 (Ala.Crim.App.2008).

. In discussing this testimony the circuit court, in its order, stated: "The Court found their testimony irrelevant as to the question of whether Neel was justified in her actions on February 28, 2006, and extraneous about the matters they related to the jury.” This testimony was relevant to the issue of Neel’s state of mind at the time of the shooting.

6. Our research has revealed no case since 1929 in which an Alabama appellate court reversed a trial court’s refusal to direct a verdict of acquittal in a self-defense case.